458 P.2d 699 (1969)
STATE of Oregon, Respondent,
v.
Robert Kenneth WILLIAMS, Appellant.
Court of Appeals of Oregon, In Banc.
Argued and Submitted July 9, 1969.
Decided September 12, 1969.
*700 Gary D. Babcock, Public Defender, Salem, argued the cause and filed the brief for appellant.
Ray Robinett, Dist. Atty., Hillsboro, argued the cause and filed the brief for respondent.
Before SCHWAB, C.J., and LANGTRY, FOLEY, FORT, BRANCHFIELD, JJ.
FOLEY, Judge.
On February 19, 1968, defendant was convicted by jury trial of the crime of larceny in a building under ORS 164.320. Defendant appeals from this conviction on two grounds:
(1) That defendant was not advised of his right to have court-appointed counsel present during his interrogation, as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
(2) That defendant's waiver of his constitutional rights and his oral confession were involuntary.
On November 18, 1967, defendant purportedly committed larceny in the Carnation Icecreamland store in the Raleigh Hills Shopping Center near Beaverton.
On November 30, 1967, at approximately 5:05 p.m., detectives Pyle and LaFollette of the Washington County Sheriff's office arrested defendant at his apartment in Portland. Officer Pyle testified that at this time he advised defendant of his constitutional rights. He was then taken to the Washington County Jail. Defendant was not questioned about the theft at this time.
Officer Pyle stated that at 5:45 p.m. on the 30th, at the jail, he began to advise defendant of his rights a second time when defendant waved his hand, interrupted the warning, and said that it wasn't necessary to warn him at this time. The warning was completed, however, and defendant was then questioned for the first time. Defendant was very cooperative and told Pyle and LaFollette the details of his involvement in the theft. He also told the officers that he had taken drugs that afternoon, and both officers testified that the effect of the drugs was noticeable. The questioning ceased that evening just prior to 7:40 p.m. Defendant told the officers that he was tired and hungry, so he was fed at 7:40 p.m. and the officers left.
Pyle testified that the next morning, December 1, 1967, at about 8:50 a.m., he warned defendant of his constitutional rights for the third time and questioned him a second time. Defendant repeated his statement of the previous night about his participation in the theft. This interrogation terminated at about 11:15 a.m. when defendant refused to answer questions about his sources of narcotics.
Defendant contends that the trial court erred in admitting defendant's oral confession into evidence over defendant's objection.
Defendant's first argument is that the state must prove that he was advised of his right to have court-appointed counsel present during his interrogation before his confession can be used against him at his trial.
The right to have counsel present during interrogation was set forth explicitly in Miranda v. Arizona, supra, at 469-474, 86 S.Ct. 1602. In the absence of a fully effective equivalent, this warning of his right to have counsel present during questioning is an absolute prerequisite to interrogation. Miranda v. Arizona, supra. The question here is whether the warnings given to defendant were adequate.
Pyle testified that he gave the following warning at the time of arrest:
"A * * * That we were police officers, that he had a right to remain silent, that anything he did say could be used against him in a court of law, that he was in charge of any conversation which we might have where he could say what he wished to say and did not *701 have to answer questions that he did not want to answer, that he was entitled to an attorney and that if he wanted one at that time, in case he wished to make a statement, that we would provide him one and at the same time if he did not have funds to obtain an attorney that Washington County would provide him with one."
Officer Pyle made the following statements on cross-examination about the warning given at the time of arrest:
"Q And what did you tell him about his right to an attorney?
"A That he had a right to an attorney, that he had a right to an attorney before he said anything to anybody, and if he couldn't afford an attorney, Washington County would appoint him one free of charge with no cost to him.
"Q Did you say when Washington County would appoint that attorney?
"A When they would?
"Q Yes.
"A No, not when they would appoint one, the only thing that anything would be said about when was that before he said anything he had, in other words, the right to an attorney, before he said anything.
"* * *
"THE COURT: I want to know what you told the defendant, not an explanation about what you told him but what you told him, as best you can give it.
"THE WITNESS: Yes. That he had the right to an attorney before he said anything to anybody, in other words * * *.
"* * *
"Q Did you tell him that if he couldn't afford an attorney to be present right then that you or the court right then would provide, at no expense to him, an attorney to be present?
"A Right then and now.
"Q Yes, while you were talking to him?
"A Not as far as affording him one without any expense, no, I don't believe so. No, it wasn't necessary.
"Q Did you tell him of any right that he had to an attorney at the expense of the state?
"A Yes, that if he couldn't afford one, Washington County would afford him one free of charge at no cost to himself.
"Q Okay. And did you explain to him that he didn't have to submit to questioning or answer any questions until that court-appointed attorney was, in fact, appointed?
"A Not exactly like that, no. I told him exactly what I told him, that he was entitled to an attorney before he answered any questions, period, and that if he couldn't afford one, Washington County would afford one for him at no expense to himself. That's about as plain as you can get."
Pyle testified that prior to the first interrogation defendant was advised of the same rights in the same way as he had been at the time of arrest, even though defendant had interrupted this warning and stated that it was not necessary to advise him of his rights. He told defendant:
"THE WITNESS: That he had a right to remain silent, that anything that he said could be used against him in a court of law, that we were police officers, that he was entitled to an attorney before he said anything to anybody, and that Washington County, if he couldn't afford one, would have to afford him one free of charge * * *."
Pyle also testified that defendant was asked if he fully understood this warning and he stated he did.
On the morning of December 1, 1967, prior to the second interrogation, defendant was given the following warning by Pyle:
"A He was again advised of his right to remain silent, that he didn't have to *702 say anything to anyone, that anything that he did say could be used against him in a court of law, that conversation was under his control, that he could talk about parts of what he wanted to talk about concerning the case and if he didn't choose to answer the question he didn't have to, that he was entitled to an attorney before he said anything to anyone, and that if he could not afford an attorney that one would be appointed for him at no cost to himself by Washington County.
"Q And did the defendant answer anything to you when you had advised him ?
"A Yes, he was again asked if he understood what I had told him and he said that he did."
We hold these warnings to be adequate on these facts, but strongly recommend that more precise language be used in advising individuals of constitutional rights. Officer Pyle repeatedly testified that he told defendant that he had a right to an attorney "before he said anything to anybody." (Emphasis supplied.) Miranda, supra, at 471, 86 S.Ct. at 1626, holds "* * that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation * * *." It would have been a simple matter to be explicit about defendant's right to consult with a lawyer and to have the lawyer with him during interrogation, and thereby eliminate any question of adequacy. A series of cases decided by the Fifth Circuit Court of Appeals have held warnings somewhat similar but not identical to the ones under consideration here to be insufficient because they did not adequately inform the defendant of his right to have counsel present during interrogation. See Atwell v. United States, 398 F.2d 507 (5th Cir.1968); Lathers v. United States, 396 F.2d 524 (5th Cir.1968); Chambers v. United States, 391 F.2d 455 (5th Cir.1968); and Windsor v. United States, 389 F.2d 530 (5th Cir.1968).
However, we are more persuaded by the language of the Nevada Supreme Court in Criswell v. State, Nev., 443 P.2d 552, 553 (1968). In that case "* * * the appellant, in the office of the district attorney, was advised of his constitutional right to remain silent, that anything that he might say could be used against him in court, that he had the right to counsel, and if he was indigent and could not afford counsel that the counsel would be provided. * * *" The court, in holding that these warnings met the requirements of Miranda, supra, at 554, said, "* * * While the warnings given in the district attorney's office did not specifically advise the appellant that he was entitled to have an attorney present at that moment and during all stages of interrogation, no other reasonable inference could be drawn from the warnings as given."
It is the substance of the warning, not the form, which is important. Camacho v. United States, 407 F.2d 39 (9th Cir.1969); United States v. Vanterpool, 394 F.2d 697 (2d Cir.1968); Tucker v. United States, 375 F.2d 363, cert. den. 389 U.S. 888, 88 S.Ct. 128, 19 L.Ed.2d 189 (8th Cir.1967). The trial judge, after hearing and observing the witnesses and gauging and appraising their credibility, concluded that the proper Miranda warnings were given here. Upon this record we will not disturb his ruling.
Having found the warning to be adequate, we must now decide whether defendant's waiver of his constitutional rights and his oral confession were voluntary. As stated by the Supreme Court of Oregon in Ball v. Gladden, 86 Adv.Sh. 1159, 1160-1161, 443 P.2d 621-622 (1968):
"What actually transpired is a question of fact for the trial court or jury. If the evidence sustains such historical factual findings they will not be disturbed by this court. If findings are not made on all such facts, and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the ultimate conclusion, e.g., voluntariness *703 or lack thereof, made by the trial court or jury. Whether these historical facts as found are sufficient to sustain a finding of voluntariness which meets state and federal constitutional concepts of due process is another question, and one which falls within our proper scope of appellate review. The federal court also exercises this scope of review. Clewis v. State of Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423, 426 (1967); Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895, 898-899 (1966); Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513, 522 (1963); Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037, 1058-1059 (1961). In other words, we are not bound by a trial judge or jury's finding of voluntariness if we believe the historical facts upon which such finding is based are insufficient to meet constitutional standards of due process. This is pursuant to our duty to interpret constitutional standards and require conformance thereto."
See also State v. Atkins, 87 Adv.Sh. 385, 395-396, 446 P.2d 660 (1968); Jensen v. Gladden, 86 Adv.Sh. 1171, 1172, 443 P.2d 626 (1968); Miotke v. Gladden, 86 Adv. Sh. 1131, 1133-1138, 443 P.2d 617 (1968) (O'Connell, J., specially concurring).
In Miranda v. Arizona, supra, the court said, 384 U.S. at 475, 86 S.Ct. at 1628:
"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel * * *.
"* * * But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained * * *."
The trial court recognized and stated that ordinarily, if an officer doesn't give a defendant a right to affirmatively say "Yes, I will make a statement," then any statement made may well be inadmissible.
However, the Miranda court went on to say, at 476, 86 S.Ct. at 1629, "The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant. * * *" (Emphasis supplied.) The trial court found a fully effective equivalent to an express statement of waiver of rights in this case where defendant waved his hand and interrupted the second warning (which immediately preceded the first interrogation) by saying "It isn't necessary to tell me," and then made a statement to the interrogating officers after the warning had been completed.
We agree with the trial court's reasoning about the waiver. However, we also agree with trial court's statement that ordinarily, before interrogation commences, in addition to being asked if he understands his rights, the defendant must be asked if he affirmatively waives his rights. Law officers would be well advised to follow this procedure.
The effects of the drugs on the voluntariness of this waiver must be considered. The trial court, after hearing the testimony, stated that the defendant appeared to remember accurately what occurred during interrogation, that the drugs did not appear to have had any effect on his ability to answer questions or his capacity to know what he was doing during interrogation, and that he remembered precisely everything that happened concerning the theft. The trial court therefore concluded that defendant's statement was not affected by any narcotics he had taken. The record supports this determination. See also 69 A.L.R.2d 384 (1960).
The trial court also found that the oral statement was voluntarily given and was not induced by force, coercion, threats or promises. The record contains nothing which disputes this finding.
Affirmed.