Argued and submitted August 24, affirmed November 30, 1983

# STATE OF OREGON,
*Respondent,*

*v.*

# PAUL GALEN LYON,
*Appellant.*

## (82-0147; CA A26214)

672 P2d 1358

J. Marvin Kuhn, Chief Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, William F. Gary, Deputy Attorney General, and James E. Mountain, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

This appeal arises out of defendant's conviction of murder. ORS 163.115. He now challenges that conviction in two respects: (1) by placing the burden on defendant of proving the affirmative defense of extreme emotional disturbance, ORS 163.115 contravenes the due process provisions of both the United States and Oregon Constitutions; (2) the trial court erred in denying his motion to suppress statements he made to police while hospitalized. We are unpersuaded by either challenge and affirm.

Defendant was divorced. His ex-wife had been seeing the victim, Briggs, on a regular basis. Defendant was also a frequent visitor at his ex-wife's house, and friction developed between Briggs and him. On the night in question, defendant went, unannounced, to his ex-wife's house to pick up some important papers. He arrived there armed with a rifle and a pistol, allegedly because he feared harm from Briggs. After letting himself into the house, defendant, still armed, went to his ex-wife's bedroom, where he found her in bed with Briggs. Briggs had concealed a revolver under the covers and fired through them, wounding defendant. Defendant fired back, killing Briggs. Defendant was transported to the hospital, where he remained for over three weeks. He was visited several times by police while hospitalized, but was not charged until a week after his release. The indictment charged defendant with aggravated murder, ORS 163.095, murder, ORS 163.115, and burglary. ORS 164.225. At trial, he was convicted only of murder.

### DUE PROCESS

Defendant assigns as error the trial court's jury instructions on the crime of murder. The real issue he seeks to raise, however, is the constitutionality of ORS 163.115, Oregon's murder statute.[1] It provides, in pertinent part:

---

[1] Defendant actually challenges both ORS 163.115 and ORS 163.118(1); the latter provides, in pertinent part:

"(1) Criminal homicide constitutes manslaughter in the first degree when:

"* * * * *

"(b) It is committed intentionally by a defendant under the influence of extreme emotional disturbance as provided in ORS 163.135. The fact that the homicide was committed under the influence of extreme emotional disturbance

"(1) Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder when:

"(a) It is committed intentionally, except that it is an affirmative defense that, at the time of the homicide, the defendant was under the influence of an extreme emotional disturbance; * * *

"* * * * *"

Defendant contends that shifting the burden of proof to him on the affirmative defense of extreme emotional disturbance relieves the prosecution of its duty to prove every element of the crime beyond a reasonable doubt and, accordingly, violates state and federal due process standards.

## Historical Background

The statutes defining different degrees of criminal homicide and establishing their elements have undergone significant revision over the last decade. Before 1971, Oregon law used the traditional two-degree formulation. Both degrees of murder prohibited intentional killing, but only first degree murder contained the additional and greater element of deliberation and premeditation. *See State v. Quinn,* 290 Or 383, 400-01, 623 P2d 630 (1981).

In 1971, the two-degree pattern was repealed, and the legislature adopted a single definition of murder, with "intent" as the requisite mental state. "Premeditation," as an aggravating circumstance elevating murder to a higher degree crime, was eliminated because of the abolition in 1964 of capital punishment as the penalty for the more aggravated offense. ORS 163.115 (*amended by* Or Laws 1975, ch 577, § 1, Or Laws 1979, ch 2, § 1 and Or Laws 1981, ch 873, § 5); *see* Proposed Oregon Criminal Code 86-88 § 88(C) (1970); *State v. Quinn, supra,* 290 Or at 402-03. Capital punishment was reenacted by initiative in the general election of 1978, and deliberation was restored as an additional element of murder for which the death penalty could be imposed. However, that statute was invalidated. The Supreme Court found that the

constitutes a mitigating circumstance reducing the homicide which would otherwise be murder to manslaughter in the first degree and need not be proved in any prosecution."

Defendant's objection to ORS 163.118 is identical to his objection to ORS 163.115. Accordingly, although this opinion focuses on ORS 163.115 only, the analysis applies equally to ORS 163.118.

death penalty act infringed on the right to jury trial embodied in the Oregon Constitution, because it left the factual determination of whether the intentional killing was done with deliberation to the sentencing judge rather than to the jury. *State v. Quinn, supra,* 290 Or at 403-04. Accordingly, the current statutory scheme remains one in which the higher degree of murder based on deliberation has been eliminated. There is a single form of intentional murder with a single requisite mental state; deliberation and premeditation are not recognized as aggravating elements of the crime.

The statutory changes in 1971 also altered the traditional distinctions between murder and first degree manslaughter. Before 1971, manslaughter was defined as an intentional killing "upon a sudden heat of passion * * *." *See* former ORS 163.040 (*repealed by* Or Laws 1971, ch 743, § 432); Proposed Oregon Criminal Code 89-90, § 89C (1970). The 1971 revision adopted an "extreme emotional disturbance" standard for manslaughter. ORS 163.125 (*amended by* Or Laws 1975, ch 577, § 3). The new standard was intended to include a wider range of mitigating circumstances than the former "heat of passion." *See* Proposed Oregon Criminal Code 88-90, §§ 89(A) and (C) (1970).

The 1971 scheme required a defendant to give notice of intent to introduce evidence of extreme emotional disturbance but failed to make clear whether the state or the defendant had the burden of proof on the issue. ORS 163.135 (*amended by* Or Laws 1971, ch 743, § 90; Or Laws 1977, ch 235, § 1 and Or Laws 1981, ch 873, § 7). We concluded that the 1971 legislature intended extreme emotional disturbance to be an ordinary defense to murder, to be disproved by the state beyond a reasonable doubt if raised by the defendant. *State v. McCoy,* 17 Or App 155, 521 P2d 1074, *aff'd on other grounds,* 270 Or 340, 527 P2d 725 (1974); *See also State v. Keys,* 25 Or App 15, 548 P2d 205, *rev den* (1976).

In 1981, the legislature enacted the present scheme, which unequivocally provides that extreme emotional disturbance is an affirmative defense to murder, thus requiring the defendant to prove the affirmative of the issue by a preponderance of the evidence.[2] When that burden is satisfied,

---

[2] ORS 161.055 specifically assigns the burden of proving affirmative defenses by a preponderance of the evidence to the defendant.

murder is reduced to manslaughter in the first degree. Thus, the current murder statute only requires the prosecution to prove that the defendant intentionally caused the death of another. The defendant may, however, convince the jury to reduce the crime to manslaughter if he establishes by a preponderance of the evidence that he was acting under the influence of an extreme emotional disturbance. Defendant asserts that that relieves the state of its duty to prove all elements of a crime. Such a scheme, he maintains, is violative of the due process guaranteed by both the Oregon and federal constitutions. We address the Oregon Constitution first.

## Oregon Constitution

■ Defendant claims that due process protections exist in Article I, sections 10, 20 and 33, of the Oregon Constitution. However, he neglects to advance any support for this notion. We are also unable to provide any.

The Oregon Constitution has no Due Process Clause. *See, e.g., State v. Clark,* 291 Or 231, 235 n 4, 630 P2d 810, *cert den* 454 US 1084 (1981); *State v. Stroup,* 290 Or 185, 200, 620 P2d 1359 (1980). It has been said that "when Oregon lawyers and judges invoke due process * * *, they are in the area of federal law." Linde, *Without "Due Process" — Unconstitutional Law in Oregon,* 49 Or L Rev 125, 145-46 (1970). Accordingly, due process challenges to statutes which assign a burden of proof on an issue to a defendant in a criminal case must be decided in Oregon on federal constitutional grounds, and the pronouncements of the United States Supreme Court are controlling. *See State v. Burrow,* 293 Or 691, 695 n 5, 653 P2d 226 (1982); *State v. Stroup, supra.*

## U.S. Constitution

■ The requirements of Fourteenth Amendment due process in the area of criminal law were clearly articulated in *Re Winship,* 397 US 358, 364, 90 S Ct 1068, 25 L Ed 2d 368 (1970):

"Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

Defendant argues that ORS 163.115 violates *Winship* in that it transfers the burden of proof on the element of extreme emotional disturbance to the defendant, and that it lowers the burden of proof to a preponderance of the evidence. In support of his position, defendant relies primarily on *Mullaney v. Wilbur,* 421 US 684, 95 S Ct 1881, 44 L Ed 2d 508 (1975). *Mullaney* involved application of the *Winship* due process standard to a Maine homicide statute, which required the defendant to bear the burden of proof in establishing that he acted in "heat of passion" on sudden provocation, thus reducing the crime to manslaughter. *Mullaney v. Wilbur, supra.* Under Maine law, murder was a killing committed with malice aforethought, express or implied, and the deliberation necessary for malice aforethought could be presumed from the act of intentionally killing. *Mullaney v. Wilbur, supra,* 421 US at 686-87. A defendant could, however, rebut that presumption by proving "heat of passion." Because heat of passion is the logical opposite of malice aforethought, the statutory scheme thus had the effect of presuming an element of the crime, which the defendant was then required to disprove under an affirmative defense.

The statute was invalidated on the ground that it shifted the burden on proof on an element of the crime to the accused. *Mullaney v. Wilbur, supra,* 421 US at 703-04. That holding was at first believed to extend to any instance in which the state places the burden on a criminal defendant to prove any issue in the case, and some courts interpreted *Mullaney* as making unconstitutional virtually all criminal law affirmative defenses. *See State v. Burrow, supra,* 293 Or at 695-97. Subsequent to its decision in *Mullaney,* the United States Supreme Court decided *Patterson v. New York,* 432 US 197, 97 S Ct 2319, 53 L Ed 2d 281 (1977), which, as our Supreme Court observed in *State v. Stroup, supra,* 290 Or at 200, greatly narrowed the rule announced in *Mullaney. Patterson* adhered to the basic holding of *Mullaney, i.e.,* that the state may not shift the burden of proof on an element of a crime to a defendant, but it declined "to adopt as a constitutional imperative, operative countrywide, that a state must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of the accused." 432 US at 210. The challenged murder statute was nevertheless upheld by narrowly defining what constitutes an element of a crime as "* * * a fact which the state

deems so important that it must be either proved or presumed. * * *" 432 US at 215. *Patterson* emphasized that the constitutional defect in *Mullaney* was the combination of a presumption, which satisfied the state's burden of proof, and the affirmative defense required to rebut those presumed facts. 432 US at 215-16. So, *Mullaney* was carefully limited to its facts.

What makes *Patterson* pertinent to the case under discussion is that it involved a murder statute identical to Oregon's in all material respects. *Patterson* is, therefore, factually on point and controlling. The Supreme Court outlined the challenged statute, N.Y. Penal Law § 125.25:

"* * * The crime of murder is defined by the statute, which represents a recent revision of the state criminal code, as causing the death of another person with intent to do so. The death, the intent to kill, and causation are the facts that the State is required to prove beyond a reasonable doubt if a person is to be convicted of murder. No further facts are either presumed or inferred in order to constitute the crime. The statute does provide an affirmative defense — that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation — which, if proved by a preponderance of the evidence, would reduce the crime to manslaughter, an offense defined in a separate section of the statute. It is plain enough that if the intentional killing is shown, the State intends to deal with the defendant as a murderer unless he demonstrates the mitigating circumstances." 432 US at 205-06.

In each murder conviction under New York or Oregon law, the state will have proved beyond a reasonable doubt that the defendant intentionally killed another person. The affirmative defense of extreme emotional disturbance does not serve to negate any of the facts the state must prove in order to convict. Rather, extreme emotional disturbance constitutes a separate, mitigating circumstance on which the defendant is required to carry the burden of persuasion. The state therefore bears the burden on every element of the offense, as it must under *Winship*. Nothing is presumed against the defendant, and the particular problem presented in *Mullaney* does not exist here. *See Patterson v. New York, supra,* 432 US at 215. In *State v. Burrow, supra,* 293 Or at 699, the Supreme Court summarized the ultimate result of the *Mullaney* and *Patterson* decisions:

"* * * Unless an affirmative defense has the effect of transferring to the defendant the burden of disproving an element of the prosecution's case, the affirmative defense will be permitted."

Oregon's affirmative defense of extreme emotional disturbance, as provided by ORS 163.115, is separate and independent from the elements the state must prove to obtain a murder conviction and accordingly does not violate due process.

## MOTION TO SUPPRESS

Also assigned as error is the trial court's refusal to suppress statements defendant made to police while hospitalized. Defendant contends that: (1) the circumstances of his hospitalization were the factual equivalent of custody and therefore required *Miranda* warnings; and (2) his painful injuries and the medication administered therefor so affected his judgment that any statements he made to police were involuntary.

### Miranda

Custody triggers the need for *Miranda* warnings, and it can occur from an actual arrest or from a deprivation of freedom of action in some significant way. *Miranda v. Arizona,* 384 US 436, 444, 86 S Ct 1602, 16 L Ed 2d 694 (1966). During the first three days that defendant was a patient at Bess Kaiser Hospital he gave two statements to police. He was not advised of his constitutional rights in connection with either of those statements. At trial, he sought suppression of the statements as the products of custodial interrogations. On the basis of evidence presented at the hearing on the motion to suppress, the trial judge made specific factual findings. He found that the police did not form the intent to arrest defendant until after he was released from the hospital. He found that defendant was never told that he could not use the telephone. He found that defendant actually called in and out of the emergency room and, in fact, had a telephone in his room. The trial judge noted that defendant was treated by the hospital as a confidential case but that such treatment is routine whenever a patient has aroused substantial media attention, as defendant had. This "confidential" status resulted in defendant not receiving all of his phone messages,

including one from a friend who was also an attorney. However, that friend was found not to be defendant's attorney, but actually more of a volunteer. Thus, his inability to communicate with defendant had no impact on this issue. On the basis of all these findings, the trial judge concluded that defendant was not in custody or deprived of his freedom of action in a significant way for purposes of mandating *Miranda* warnings. He, therefore, refused to suppress the statements defendant gave to police while hospitalized.

The evidence in this case clearly supports the trial judge's findings of historical fact. *See Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). Moreover, his legal conclusions follow from the evidence. Defendant was a patient in a hospital of his own choice, being treated for injuries. The police were in no way responsible for his predicament and, in fact, were themselves somewhat in the dark about the whole episode. He was ultimately discharged without any interference by police and was not arrested until a week later. Accordingly, we hold that the challenged statements were given to the police in an investigatory and not a custodial setting. *Miranda* warnings were not required.

## Voluntariness

Defendant's other argument in favor of suppression is that his statements to police were involuntary. A statement is given voluntarily if it is the product of a free and unconstrained choice. *State v. Rollwage,* 21 Or App 48, 50, 533 P2d 831 (1975). A statement is not given voluntarily if the will is overborne and the accused's capacity for self-determination is critically impaired. *Schneckloth v. Bustamonte,* 412 US 218, 225-26, 93 S Ct 2041, 36 L Ed 2d 854 (1973). On this issue, we are again aided by the findings of the trial judge:

"* * * [T]here were no promises or representations or inducements to obtain either these consent forms or the statements during the interviews. I find there was no physical abuse or violence. There was no force. I find an absence of threats, or fear, duress and coercion. None of these were present. * * *"

However, defendant claims that he was too sedated with medication and in too much pain to understand fully the situation and freely exercise his own will. In concluding to the contrary, the trial judge noted the persuasive testimony of two

witnesses. The first was a nurse who attended defendant and, as part of her routine, tested his orientation in time, place and circumstance. She concluded that on the day of his admission, defendant was alert and responsive. The trial judge found her credible and to have an excellent grasp of the issues giving rise to the motion to suppress.

The other persuasive witness on this issue, according to the trial judge, was defendant himself. After listening to the recorded interview, he found defendant responsive. The trial judge was also impressed with defendant's detailed and accurate testimony recounting his conversations with police. That ability to remember detail is convincing evidence that defendant was able to understand and reason at the time the interviews with police took place. *See State v. Williams,* 1 Or App 30, 39, 458 P2d 699 (1969). Furthermore, the dosages of sedative he had received were minimal and should have dissipated by the time of the first interview. We will not disturb the trial court's ruling that defendant's statements were given voluntarily.

Affirmed.