No. 226　　　　　March 19, 2025　　　　　9

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHANE RYAN MICHEAL WAYMAN,
*Defendant-Appellant.*

Jackson County Circuit Court
19CR74445; A180049

Lorenzo A. Mejia, Judge.

Argued and submitted September 24, 2024.

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Leigh Salmon, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rebecca M. Auten, Assistant Attorney General.

Before Tookey, Presiding Judge, Kamins, Judge, and Armstrong, Senior Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

In this criminal case, defendant was tried and convicted by a jury of one count of second-degree murder, ORS 163.115(1)(a),[1] and one count of second-degree abuse of a corpse, ORS 166.085(1)(b), after an incident in which defendant killed his landlord's fiancée, D, by repeatedly striking her in the head with a bat. This appeal concerns only defendant's conviction of second-degree murder, a charge for which defendant asserted the affirmative defense of extreme emotional disturbance (EED). ORS 163.115(1)(a) (setting forth EED as an affirmative defense to murder in the second degree); ORS 163.118(1)(b) (murder constitutes manslaughter when committed under EED); ORS 163.135(1) (describing affirmative defense of EED).

Defendant raises five assignments of error pertaining to three legal issues. In his first and second assignments of error, defendant raises the issue of whether a unanimous jury was required to reject his EED defense. We conclude that, because EED is not an element of second-degree murder that must be disproved by the state, and the existence of EED is instead a mitigating factor that defendant has the burden to prove, jury unanimity is not required to reject the defense and convict defendant of second-degree murder. In his third and fourth assignments of error, defendant raises two challenges to the court's jury instructions on EED, one preserved error and one as plain error. We reject both assignments. In his fifth assignment of error, defendant raises as plain error the trial court's failure to send the jury back to deliberate when a jury poll revealed an inconsistency between the verdict and the jury poll, and decision to instead conduct a second jury poll. We conclude that it is neither obvious nor beyond reasonable dispute that the court erred in conducting a second jury poll and that, in any event, we would not exercise our discretion to correct any error. For those reasons, explained in more detail below, we affirm defendant's conviction for second-degree murder.

---

[1] ORS 163.115(1)(a) provides that:

"[C]riminal homicide constitutes murder in the second degree:

"(a) When it is committed intentionally, except that it is an affirmative defense that, at the time of the homicide, the defendant was under the influence of an extreme emotional disturbance[.]"

## I.  BACKGROUND

Defendant rented a room in T's house, where T, D, and a third roommate also lived. Defendant argued with D one evening; the following day, defendant found an eviction notice affixed to his bedroom door. Defendant contacted T, who was at work. T directed defendant to speak with D, who was at home, about the eviction notice. Defendant did not speak to D. After approximately three hours, defendant left his room and struck D in the head multiple times with a metal baseball bat, killing her. Defendant hid D's body in a rural area. He subsequently turned himself in to the police, confessed to killing D, and assisted law enforcement in finding D's body.

Defendant was charged with second-degree murder and second-degree abuse of a corpse. He admitted that he had intentionally caused D's death but asserted that he did so while suffering from EED. Thus, defendant asserted, he should be convicted of first-degree manslaughter rather than second-degree murder. *See* ORS 163.118(1)(b).[2] Defendant introduced evidence of childhood trauma and abandonment in support of his EED defense. Defendant's chief argument was that an ordinary person with defendant's background and life experience, in a similar circumstance, would have experienced EED, such that they also would have killed D.

The court instructed the jury on the elements of second-degree murder. Defendant had proposed the following alternative jury instruction to the uniform jury instruction on the affirmative defense of EED:

> "[I]n order to find the defendant has *not* established the affirmative defense of extreme emotional disturbance, all twelve jurors must agree that the defendant failed to establish the affirmative defense of extreme emotional disturbance."

---

[2] ORS 163.118(1)(b) provides that:

"Criminal homicide constitutes manslaughter in the first degree when:

"* * * * *

"(b)  It is committed intentionally by a defendant under the influence of extreme emotional disturbance as provided in ORS 163.135, which constitutes a mitigating circumstance reducing the homicide that would otherwise be murder to manslaughter in the first degree and need not be proved in any prosecution[.]"

(Italics in original.). However, the trial court denied defendant's requested instruction and instructed the jury as follows:

"Guilty verdicts must be unanimous, which means that every juror must agree that the verdict is guilty on that particular count. ***"

"At least 10 jurors must agree to find the Defendant has established the affirmative defense of extreme emotional disturbance."

Defendant also proposed an alternative verdict form, mirroring his proposed jury instruction concerning EED. That special verdict form first asked whether defendant "intentionally cause[d] the death of [the victim]," directing the jury to answer "Yes" only if it was unanimous. The form next asked whether defendant acted under the influence of EED, directing the jury to answer "No" only if it was unanimous. Only then did the form direct the jury to indicate whether defendant was guilty of second-degree murder or manslaughter.

The trial court declined to use defendant's proposed verdict form and instead gave the jury a verdict form that reflected the court's instruction on EED. First, the form asked the jury to indicate whether it found defendant not guilty or guilty of second-degree murder. Next, the form directed that, if the jury found defendant guilty, it "must answer the following additional question: Was the defendant under the influence of an Extreme Emotional Disturbance when he intentionally caused the death of [D]?" Finally, the form instructed, "In order for the jury to return a finding of 'yes' on this defense, at least 10 jurors must agree[.]"

The jury unanimously found defendant guilty of second-degree murder. That is, all twelve jurors unanimously agreed that "[defendant] intentionally caused the death of [the victim], another human being." The jury so reported by marking "guilty" on the verdict form under "Murder in the Second Degree." As for the additional question concerning the EED defense, the jury reported that it found that defendant had not proved "that he was acting under the influence of an extreme emotional disturbance at

the time of the Murder." When polled, the jury confirmed that all jurors unanimously found that defendant was guilty of second-degree murder, and that only two jurors found that defendant had proved his EED defense.

The trial court entered a judgment of conviction for second-degree murder. Defendant appeals, raising five assignments of error.

## II.  DISCUSSION

### A.  *Defendant's First and Second Assignments of Error*

Defendant's first two assignments of error relate to the validity of the verdict. He contends that the jury should have been instructed to consider whether defendant was guilty of second-degree murder only after *first* unanimously rejecting his EED defense. In his first assignment, defendant challenges the trial court's failure to give defendant's requested jury instruction requiring the jury to unanimously reject defendant's EED defense before finding him guilty of second-degree murder. In his second assignment, defendant challenges the trial court's failure "to use defendant's special verdict form which correctly permitted the jury to find defendant guilty of second-degree murder only after it unanimously rejected his EED defense." Defendant contends that unanimity was required under the relevant statutes and by the Sixth and Fourteenth Amendments to the United States Constitution.[3]

The state responds that the trial court correctly rejected defendant's proposed jury instruction and verdict form because, under the statutory scheme, the jury must first determine whether a defendant committed second-degree murder, and then consider whether the established offense should be reduced to manslaughter on a finding that

---

[3] The Sixth Amendment to the United States Constitution provides that

"[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]"

That right applies to the states through the Fourteenth Amendment to the United States Constitution. *See Duncan v. Louisiana*, 391 US 145, 149, 88 S Ct 1444, 20 L Ed 2d 491 (1968) (explaining "that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which—were they to be tried in a federal court—would come within the Sixth Amendment's guarantee").

the defendant acted under EED. In the state's view, a failure by the jury to agree that defendant had not proved EED properly resulted in a conviction for second-degree murder, as the jury had already unanimously found that the state had proved each element of that offense beyond a reasonable doubt. Thus, the state contends, there was no error, either in the court's jury instructions or in the verdict form.

"We review jury instructions for errors of law." *State v. Swanson*, 237 Or App 508, 510, 240 P3d 63 (2010), *aff'd*, 351 Or 286, 266 P3d 45 (2011); *see also State v. Lomax*, 288 Or App 253, 259, 406 P3d 94 (2017) ("We review a trial court's failure to give a requested jury instruction for errors of law." (Internal quotation marks omitted.)). A trial court's ruling on jury instructions "is not error *** if the instruction given by the court, although not in the form requested, adequately covers the subject of the requested instruction." *State v. Pedersen*, 242 Or App 305, 315, 255 P3d 556, *rev den*, 351 Or 254 (2011). Similarly, we review a trial court's rejection of a proposed special verdict form for errors of law. *See, e.g.*, *Lyons v. Walsh & Sons Trucking Co., Ltd.*, 183 Or App 76, 86-87, 51 P3d 625 (2002), *aff'd*, 337 Or 319, 96 P3d 1215 (2004), *overruled on other grounds*, *Purdy v. Deere and Company*, 355 Or 204, 324 P3d 455 (2014) (in a civil case, so reviewing a trial court's rejection of a party's proposed verdict form). We review defendant's first two assignments of error together, as they are subject to the same standard of review and we understand them to present the same question: whether jury unanimity was required to reject the EED defense; that is, whether twelve jurors must first agree that defendant did not act under EED in order to find defendant guilty of second-degree murder.

That issue, at the outset, is a question of statutory construction. In determining the legislature's intentions, we consider the statute's text in context and legislative history to the extent that it is useful. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Thus, we begin our analysis with the statutory text.

ORS 163.115(1) outlines the elements of second-degree murder:

"Except as provided in ORS 163.095, 163.118 and 163.125, criminal homicide constitutes murder in the second degree:

"(a)   When it is committed intentionally, except that it is an affirmative defense that, at the time of the homicide, the defendant was under the influence of an extreme emotional disturbance[.]"

The text of ORS 161.115(1)(a) requires that the first determination to be made in a charge of second-degree murder is whether the person intentionally committed "criminal homicide." That determination results in a finding of guilt of second-degree murder, and comes first, because without such a finding, there is no reason for a defendant to raise EED. That conclusion leads us to reject defendant's contention that the statute requires that the jury make a finding on EED before a finding of guilt of second-degree murder.

A person commits criminal homicide by "caus[ing] the death of another human being." ORS 163.005(1). Proof of intentional criminal homicide constitutes second-degree murder, unless the defendant then establishes that the defendant committed intentional criminal homicide while the defendant was experiencing EED. ORS 163.115(1)(a). If EED is established, the offense of second-degree murder is reduced to manslaughter in the first degree. ORS 163.118(1) provides:

"Criminal homicide constitutes manslaughter in the first degree when:

"* * * * *

"(b)   It is committed intentionally by a defendant under the influence of extreme emotional disturbance as provided in ORS 163.135, which constitutes a mitigating circumstance reducing the homicide that would otherwise be murder to manslaughter in the first degree and need not be proved in any prosecution[.]"

A defendant asserting EED as an affirmative defense to a charge of second-degree murder "has the burden of proving the defense by a preponderance of the evidence" to the trier of fact. ORS 161.055(2) (describing the burden of proof for affirmative defenses).

Our case law has upheld the constitutionality of placing the burden of proof of the affirmative defense of EED on the defendant. *State v. Lyon*, 65 Or App 790, 797, 672 P2d 1358 (1983) (upholding the constitutionality of shifting the burden of proving EED to the defendant). But the statutory text does not answer the question before us: whether a unanimous jury must reject the EED defense before finding a defendant guilty of second-degree murder. Accordingly, we turn to the legislative history of the statute for insight into the legislature's intent.

Before 1981, it was not the defendant's burden to establish EED. Rather, when raised, it was the state's burden to disprove the defense beyond a reasonable doubt to a unanimous jury. In 1981, the legislature amended the statutes, defining EED as an affirmative defense under ORS 161.055(2), and thereby shifting to the defendant the burden of proving the existence of EED, as well as requiring that defendant do so by a preponderance of the evidence. ORS 163.115(1)(a); ORS 163.135(1); Or Laws 1981, ch 873 §§ 5, 7. The legislative history suggests that the legislature's purpose in making EED an affirmative defense was to make it more onerous to establish EED. *See* Tape Recording, House Committee on Judiciary, HB 2692, May 5, 1981, Tape 351, Side A (testimony of Lane County District Attorney Brian Barnes that, in his view, a defendant could successfully use EED even in inappropriate cases, and arguing that the burden of proving that a defendant acted while experiencing an EED should rest with the defendant because the elements of EED "are peculiarly within his own knowledge" and not "objective things that the state can put forward proof of very easily").

When the legislature amended the statutes in 1981 to require that the defendant would bear the burden to prove EED, it did not make any change to the requirement that the jury must unanimously agree that the state has proven all the elements of the crime of second-degree murder; it simply removed disproving EED as one of those elements. Put differently, before the 1981 amendments, because EED was an element that the state had to disprove, a defendant had only to raise a reasonable doubt in the mind of a single juror as to whether the defendant had acted under EED in order

to prevent a unanimous jury verdict for second-degree murder. As a result of the 1981 amendments, it is now a defendant's burden to prove the *presence* of EED when raised, as opposed to the state's burden to prove its *absence*.

There is no statutory basis on which to conclude that the legislature's amendments to ORS 163.118, which shifted the burden of proof of EED to the defendant, included an intention for the jury unanimity requirement to continue to apply to the rejection of the EED defense. That is, it was not the intention of the legislature to retain the feature of the prior statutory scheme that allowed a defendant to successfully assert an EED defense by persuading only one juror that the defendant acted under EED. That construction of the statute would be inconsistent with the legislature's apparent intention to enhance the procedural standards applicable to raising and establishing EED. Thus, the trial court did not err in instructing the jury that it must unanimously determine that "[defendant] intentionally caused the death of [the victim], another human being," before considering defendant's EED defense, and that at least 10 jurors must accept defendant's EED defense. *See State v. Ross*, 367 Or 560, 565, 481 P3d 1286 (2021) (upholding constitutionality of jury acquittal by ten jurors under Article I, section 11 ("provid[ing] that, in criminal cases, 'ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict, and not other-wise'") and ORS 136.450 (providing that "'[t]he verdict of a trial jury in a criminal action shall be by concurrence of at least 10 of 12 jurors'")).[4]

Citing *Ramos v. Louisiana*, 590 US 83, 90, 140 S Ct 1390, 206 L Ed 2d 583 (2020) (holding that "[a] jury must reach a unanimous verdict in order to convict"), and *U. S. v. Southwell*, 432 F3d 1050, 1055 (9th Cir 2005), defendant contends that the Sixth and Fourteenth Amendments to the United States Constitution require that a defendant be convicted by unanimous verdict, and that a unanimous verdict is reached only if the jury first unanimously rejects a defendant's

---

[4] We note that defendant does not separately challenge the trial court's instruction and the verdict form's statement that ten of twelve jurors must agree that defendant has established EED.

EED defense. In defendant's view, that is so because, if even one juror is persuaded by defendant's evidence, then the verdict of second-degree murder is not unanimous. In *Southwell*, the court held as much with respect to the affirmative defense of insanity, holding that "[s]ince a jury verdict must be unanimous, a jury united as to guilt but divided as to an affirmative defense (such as insanity) is necessarily a hung jury." *Id*. Defendant contends that the same conclusion applies here to the defense of EED: If the jury is divided as to the affirmative defense of EED, it is a hung jury.

But we are not bound by the Ninth Circuit's ruling. *See Mears v. Marshall*, 138 Or App 476, 478, 909 P2d 212 (1996) ("We are not bound by the Ninth Circuit's decisions on federal questions that are unresolved by the United States Supreme Court[,]" and "[w]e consider decisions by all lower federal courts, including the Ninth Circuit, as persuasive authority but employ an independent analysis to reach our own conclusion." (Internal citation omitted.)).

And for several additional reasons, we reject defendant's constitutional argument. A defendant has the right to a jury trial only with respect to the elements of the crime. *See Oregon v. Ice*, 555 US 160, 163, 129 S Ct 711, 172 L Ed 2d 517 (2009) (explaining that decisions concerning jury-trial right "are rooted in the historic jury function—determining whether the prosecution has proved each element of an offense beyond a reasonable doubt"); *see also Apprendi v. New Jersey*, 530 US 466, 490 n 16, 120 S Ct 2348, 147 L Ed 2d 435 (2000) (distinguishing between aggravating facts that increase punishment, to which jury-trial right applies, and "facts in mitigation," to which the right does not apply). And as discussed above, the absence of EED is not an element of the crime of murder; instead, EED is a "mitigating circumstance on which the defendant is required to carry the burden of persuasion" and to which no jury-trial right applies. *Lyon*, 65 Or App at 797. As we held in *Lyon*, the affirmative defense of EED "is separate and independent from the elements the state must prove to obtain a murder conviction[.]" *Id*. at 798. That is why we held in *Lyon* that there is no constitutional due process impediment to placing the burden on the defendant to establish EED. *Id*.

We conclude for those reasons that the jury was not required to unanimously reject defendant's EED defense in order to convict defendant of second-degree murder. Defendant's constitutional right to conviction by a unanimous jury was vindicated when all twelve jurors agreed that the state had proved the elements of second-degree murder beyond a reasonable doubt. Accordingly, we conclude that the trial court did not err as a matter of law either in declining to give defendant's proposed jury instruction or to use defendant's special verdict form, as the instruction and the form did not properly reflect the law.

B.   *Defendant's Third and Fourth Assignments of Error*

In his third assignment of error, defendant argues that the uniform instruction for EED is an inaccurate statement of law. In defendant's view, the instruction erroneously required the jury to find a fourth element for EED that is not set out by the statute or in case law: "that a defendant's reaction to the EED was reasonable—that another person in the same situation suffering the same EED would have committed a homicide." The disputed text is set out in italics in the third paragraph of the EED instruction:

> "If you find the defendant acted under the influence of an extreme emotional disturbance, you must then determine whether there was a reasonable explanation for it. In determining reasonableness, you must consider the explanation from the standpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. In determining the defendant's situation, you may take into account such personal characteristics of the defendant as age, sex, cultural background, physical stature, and mental and physical handicaps. However, you may not consider personality traits of the defendant. After determining the situation that you believe the defendant found himself to be in, you must determine whether *an ordinary person in that situation would have experienced such extreme emotional disturbance that he would have lost the capacity to control himself and forgo the homicide.*"

UCrJI 1309 (emphasis added).

Defendant acknowledges that the claim of error is not preserved. We may review unpreserved assignments of

error for plain error. ORAP 5.45(1). An error is plain if it is an error of law; is obvious and not reasonably in dispute; and appears on the face of the record. *State v. Reynolds*, 250 Or App 516, 519-20, 280 P3d 1046, *rev den*, 352 Or 666 (2012).

We start by examining the elements of EED that a defendant is required to prove. Those elements are set out by statute, including that EED that affected the defendant was not of his own making and had an objectively reasonable explanation. ORS 163.135(1).[5] When instructing the jury on EED, the trial court "should pose the issue in terms of whether [the] defendant was under the influence of an emotional disturbance to the extent that he lost his self-control that would have otherwise prevented his committing the homicide." *State v. Ott*, 297 Or 375, 393, 686 P2d 1001 (1984). The Supreme Court further set out three elements of EED in *State v. Counts*, 311 Or 616, 623, 816 P2d 1157 (1991):

> "The three components of extreme emotional disturbance are: (1) Did the defendant commit the homicide under the influence of an extreme emotional disturbance? (2) Was the disturbance the result of the defendant's own intentional, knowing, reckless, or criminally negligent act? (3) Was there a reasonable explanation for the disturbance?"

With respect to the third element, pertaining to reasonableness, "'[t]he question being asked is: Given particular, specified circumstances, does the jury, in its mind, find the activity reasonable for a person with these characteristics.'" *Id.* at 625 (quoting Testimony of Representative Wallace P. Carson, Jr., Minutes, Criminal Law Revision Commission, Subcommittee No. 2, November 14, 1969, 15.).

It is not obvious that the portion of the jury instruction to which defendant now objects is a misstatement of law.

---

[5] ORS 163.135(1) provides that:

"It is an affirmative defense to murder in the second degree for purposes of ORS 163.115(1)(a) that the homicide was committed under the influence of extreme emotional disturbance if the disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act and if there is a reasonable explanation for the disturbance. The reasonableness of the explanation for the disturbance must be determined from the standpoint of an ordinary person in the actor's situation under the circumstances that the actor reasonably believed them to be."

To the contrary, that language reflects the Supreme Court's discussion of EED in *Ott*, 297 Or at 393. Rather than adding a fourth element to the EED defense, the language in the third paragraph of the uniform instruction connects the subjective and objective components of a defendant's alleged EED to the act that the defendant committed while under the influence of EED: intentional homicide. In any event, it is not obvious or beyond reasonable dispute that the challenged portion of the instruction improperly requires the jury to find a new, fourth element of EED. As a result, any error is not plain and thus is not reviewable.[6]

In his fourth assignment of error, defendant contends that his proposed instruction—which differs from the uniform instruction only in the addition of the italicized phrase "ordinary person *with a similar background of life*"— better addressed the third component of an EED defense "because it maintained the requirement that the jury consider the subjective characteristics of the defendant in assessing the reasonableness of the EED." That argument is preserved, as defendant proposed the alternate instruction, and the trial court declined to give it, giving instead the uniform instruction.

As noted above, we review a trial court's refusal to give a requested instruction for errors of law. *Lomax*, 288 Or App at 259. A trial court's ruling "is not error *** if the instruction given by the court, although not in the form requested, adequately covers the subject of the requested instruction." *Pedersen*, 242 Or App at 315. Defendant contends that, without defendant's added text in the proposed instruction, the jury was not adequately instructed to consider defendant's subjective background when assessing the reasonableness of EED under which defendant asserted he committed the homicide. The state responds that the

---

[6] It would seem that any possible error was invited by defendant's proposed instruction, which included the same text. But because correctly instructing the jury is the court's obligation, instructional error might not be vulnerable to an objection that it was invited. *See State v. Wiltse*, 373 Or 1, 4, 559 P3d 380 (2024) ("Under ORCP 59 B, a trial court has a duty to instruct the jury on all the law necessary to the jury's factual findings. Under ORCP 59 E, a trial court has a duty not to comment on the evidence. Those duties are imposed on courts themselves. They are not conditional or contingent; they do not depend on the actions of parties. Parties cannot authorize courts to violate those duties.").

uniform instruction, set out above, correctly instructed the jury to consider both subjective and objective reasonableness when considering that question.

Defendant does not adequately explain why, in his view, the uniform instruction the court gave "did not fairly present defendant's defense of EED." *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be" or "to make or develop a party's argument when that party has not endeavored to do so itself."). The uniform instruction comports with the text of ORS 163.135(1) and with Supreme Court's discussion in *Counts* of the third element of the EED defense, which the court characterized as a largely objective inquiry and only a "narrowed * * * subjective scope of inquiry." 311 Or at 625-27. Defendant also does not explain why the jury needed to consider defendant's "background of life" in addition to the charge in the second paragraph that requires the jury to consider defendant's "cultural background" and myriad other subjective characteristics. Accordingly, we reject defendant's fourth assignment of error.

## C.   *Defendant's Fifth Assignment of Error*

Finally, in defendant's fifth assignment of error, which is unpreserved, he contends that "[t]he trial court erred in receiving the verdict[,]" because the trial court improperly corrected an inconsistency between the reported verdict and the results of the jury poll rather than sending the jury back out to deliberate, as required by ORCP 59 G(3).

"[ORCP] 59 B through F and G(1), (3), (4) and (5), apply to and regulate the conduct of the trial of criminal actions." ORS 136.330(1). Once a verdict is returned to the court by the jury foreperson under ORCP 59 G(1), any party may request that the jury be individually polled, ORCP 59 G(3). "If fewer jurors answer in the affirmative than the number required to render a verdict, the jury shall be sent out for further deliberations." ORCP 59 G(3). However, "[i]f the verdict is informal or insufficient, it may be corrected by the jury under the advice of the court[.]" ORCP 59 G(4).

At the conclusion of deliberations, the jury returned the verdict form to the trial court indicating that there was a unanimous "Yes" answer to the question of whether defendant was guilty of second-degree murder. After that verdict was reported, defendant requested that the jury be polled to confirm that all twelve jurors agreed that defendant was guilty of second-degree murder. The following exchange in the courtroom demonstrated confusion on the part of at least one juror concerning the court's instructions on the poll:

"The Court:    * * * If you personally voted guilty on murder in the second degree, check yes, otherwise, check no.

"Unidentified Juror:   Do we mark anything on them? Other than—

"The Court: No, just yes or no. Just a check."

The jurors then returned their ballots to the trial court and the exchange continued:

"The Court: Okay. There is an issue. We have one no vote. That's somebody said they did not vote guilty on murder in the second degree. So—and here's another issue, probably why one of you did get a (indiscernible) was probably stuck to another one. So we got no verdict on this one. So we're going to do it again, just to be clear. Again. The question is asked to murder in the second degree. The reported verdict is guilty. If you voted guilty on murder in the second degree, check yes. Otherwise, check no."

The jurors voted again, and there were twelve "Yes" votes the second time.

Neither party disputes, and we agree, that defendant did not preserve his arguments in his fifth assignment of error that the court should have sent the jury back to deliberate as required by ORCP 59 G(3), rather than polling the jury a second time.

The state argues that the trial court had discretion to guide the jury in correcting the poll under ORCP 59 G(4), which provides that, under the court's guidance, the jury may correct a verdict that is "informal or insufficient." The ORCPs do not define an "informal or insufficient" verdict, and it is not clear to us that ORCP 59 G(4) applies to a jury poll. But it is neither obvious nor beyond reasonable dispute

that the trial court lacked authority to clarify the poll by explaining to the jurors that they must answer the poll in the same way that they voted on the verdict, and to allow the jurors to submit the poll a second time. Thus, we conclude that any error is not plain.

And, even assuming that the trial court plainly erred, under these circumstances we would not exercise our discretion to correct any error. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991) (requiring that we make the decision of whether to exercise our discretion to correct an unpreserved but plain error "with the utmost caution," considering factors including "the nature of the case; the gravity of the error; the ends of justice ***; and whether the policies behind the general rule requiring preservation of error have been served"). We have reviewed the record and conclude that the trial court's treatment of the inconsistency between the reported verdict and the results of the first poll was not plainly coercive and did not obviously undermine the integrity of the jury's verdict. *Cf. State v. Garrett*, 292 Or App 860, 864-65, 426 P3d 164, *rev den*, 363 Or 744 (2018) (describing the standard for determining whether a trial court's instruction of a deadlocked jury was so "coercive" as to violate the "defendant's constitutional rights to a fair trial and due process"); *see also State v. Lewis*, 335 Or App 685, 690 n 4, 559 P3d 441 (2024) (declining to decide the unpreserved but novel question raised in the defendant's appeal of whether "it is coercive for a court to actively investigate the composition of the jury's vote," and noting that courts outside of Oregon are not in agreement on that issue).

## IV.   CONCLUSION

In sum, we conclude that the jury was not required to unanimously *reject* defendant's EED defense before finding defendant guilty of second-degree murder. To the contrary, as the jury was instructed, once it unanimously found defendant guilty of second-degree murder, the jury was required to *accept* the EED defense by at least ten votes before finding defendant guilty of first-degree manslaughter. Thus, the trial court's jury instruction and special verdict form were not incorrect in the ways that defendant has

argued. Further, we conclude that the trial court did not err in delivering the uniform jury instruction on the elements of EED, because that instruction correctly reflected those elements as set out by statute and as discussed in our case law. Finally, we conclude that it was not plain that the trial court erred in its handling of the misunderstanding caused by the jury poll, and we would decline to exercise our discretion to correct any error. Accordingly, we affirm defendant's conviction for second-degree murder.

Affirmed.