JAMES, J.
*517 *413 In Oregon criminal trials, jury concurrence is necessitated in two situations. "One situation occurs when a statute defines one crime but specifies alternative ways in which that crime can be committed." State v. Pipkin , 354 Or. 513, 516, 316 P.3d 255 (2013). The other situation occurs "when the indictment charges a single violation of a crime but the evidence permits the jury to find multiple, separate occurrences of that crime." Id. at 517, 316 P.3d 255. In that second scenario, decisions by this court, as well as the Oregon Supreme Court, have indicated that a party can address the issue either by requesting a jury concurrence instruction, or alternatively, "can ask the state to elect the occurrence on which it wishes to proceed and, in that way, limit the jury's consideration to a single occurrence." Id. (emphasis added). Unfortunately, the term "elect" and "motion to elect" have been used in caselaw to refer to different motions, made for different purposes, at different stages of litigation, potentially resulting in confusion. Also, cases describing precisely how a concurrence election is to be made, or what a trial court is obligated to do when faced with a motion to elect that is not concomitantly accompanied by a requested jury concurrence instruction, have been few. This case presents an opportunity to offer some clarity in the area.
In this case, defendant appeals a judgment of conviction on one count of menacing, ORS 163.190, raising two assignments of error. First, defendant raises a challenge to the trial court's failure to grant defendant's motion to require the state to elect a single factual occurrence that constituted the count of menacing. Defendant raises that issue asserting that it was preserved in the trial court, and the state does not contest preservation. Second, defendant raises a plain-error challenge to the trial court's failure to instruct the jury that it must concur on which factual occurrence constituted the count of menacing, acknowledging that he did not request a concurrence instruction. As we discuss below, we ultimately reject both assignments of error. Because we held in State v. White , 115 Or. App. 104, 838 P.2d 605 (1992), that the crime of menacing does not require an election of a single factual occurrence, and defendant does not challenge that decision in this appeal, both defendant's preserved and unpreserved claims must fail. Accordingly, we affirm.
*414 The relevant facts are procedural in nature. The charging instrument alleged that defendant "did unlawfully and intentionally attempt to place [the victim] in fear of imminent serious physical injury" on a particular date in a particular county, but it did not specifically identify which occurrence constituted the crime.[1] Immediately before trial, defendant moved to have the prosecution elect a theory of what action formed the basis for the menacing charge. The state declined to make an election at that time, stating that it would make an election if, after the evidence was presented, there was reason to do so. During the state's opening statement, the state told the jury that defendant was "charged with Menacing [constituting] domestic violence because of his threats to kill [the victim] and bury her if she talked to police." During its case in chief, the state presented evidence that defendant, the victim, and their son were traveling in the victim's car together. Defendant was driving. At some point during their car trip, defendant and the victim stopped at a store to buy beer, wine, and snacks. They began traveling again, and defendant began to drink the beer that had just been purchased. Defendant became agitated. As a result of his agitation, he and the victim began to argue about the language defendant was using in front of their child. Defendant needed to use the bathroom and pulled off to a rest stop. After defendant used the bathroom, the victim suggested that she drive because she had not been drinking. Defendant refused to allow the victim to drive, saying that he would leave without her if she did not get back into the car. The victim returned to the vehicle.
*518 After she did so, defendant threatened to put the car into reverse and crash into something to kill everybody in the vehicle. Defendant then put the vehicle into reverse and accelerated backwards at a high rate of speed. The victim grabbed defendant's face to try to get him to stop accelerating backwards. He did stop accelerating backwards, but then grabbed the victim and violently attacked her.
*415 After the attack was over, the victim exited the vehicle. Defendant informed the victim that he would take the child and leave without her if she did not return to the car. The victim returned to the car. Defendant proceeded to drive the three of them home. On the drive home, defendant told the victim he had a knife and a gun. The victim never saw the gun but did see the knife. Defendant told the victim that she should not contact the police or he would kill her, dispose of her body, and burn down her house. Over the course of the drive home, defendant threatened the victim. Defendant drove to his house, he exited the car, and the victim departed for her house with their son. At some point after, defendant's mother arrived at the victim's house, and together they called the police.
The victim and child both testified. The child testified only that defendant drove quickly backwards in the vehicle, and violently attacked the victim after she grabbed him. At the close of evidence, while working out jury instructions, defendant again requested that the state make an election as to the occurrence that constituted menacing. The state argued that it would be hard to "encapsulate" the conduct that constituted menacing, but specified that "having the gun and making threats[,] * * * [d]riving and making threats[,] * * * [t]he manner in which [defendant] was driving[,] * * * [and] [h]is statements to [the victim]" constituted the count of menacing.
Ultimately, the trial court denied defendant's motion to require the state to elect, and accordingly, no election was made in argument before the jury. Defendant thereafter did not request a concurrence instruction, and the trial court did not give a concurrence instruction. During closing arguments, while in the context of arguing why self-defense was inapplicable in this case, the state said "[defendant's] driving in a manner that was very scary to [the victim]. In other words, peeling out and going backwards saying he's gonna crash the car." Defendant was found guilty on all counts and appealed.
On appeal, defendant assigns error to the trial court's failure to require the state to elect a single factual occurrence that constituted the count of menacing, and to the trial court's failure to instruct the jury that it must concur on which factual occurrence constituted the count of menacing.
*416 Defendant argues that because the jury could have found that defendant committed menacing during three separate occurrences, the trial court should have required the state to elect a single factual occurrence or instructed the jury that it must agree upon the factual occurrence that constituted the crime. Defendant acknowledges that he did not request a concurrence instruction but asks this court to exercise our discretion to review the trial court's failure to give a concurrence instruction as plain error. The state argues that the offense of menacing is not necessarily committed by a specific, discrete act but can consist of a series of acts and statements, that, when considered together, constitute the crime of menacing. The state argues that because the state's evidence below showed that because the aggregate of the occurrences that formed the basis for the menacing charge constituted a single offense, no election is necessary for the crime of menacing. The state also argues that defendant's assignment of error regarding the concurrence instruction is not plain error.
We address defendant's assignment of error regarding the trial court's failure to require the prosecution to elect a single factual occurrence first. At the outset, it is important to recognize that we have historically used the term "election" or "motion to elect" somewhat imprecisely in the past. A review of how we have used those terms shows that we have applied them at two different points in litigation, serving very different purposes. We begin, therefore, by cleaning up the terminology in this area.
*519 A "motion for election" made early on in litigation, often pretrial, is conceptually similar to a civil motion to make more definite and certain under ORCP 21 D.[2] Oregon *417 has no formal criminal procedure code, and hence there is no direct procedural equivalent to ORCP 21 D in criminal practice. The closest conceptual equivalent would be a motion for a bill of particulars. See State v. Darlene House & James House , 260 Or. 138, 142-43, 489 P.2d 381 (1971) (explaining that the purpose of such a motion is "to provide the defendant with further information respecting [a] charge [against him] so as to enable him to prepare his defense and avoid prejudicial surprise at trial"). Of note, a bill of particulars-in jurisdictions that allow for them-requires that "an indictment must be sufficient on demurrer before any right to a bill of particulars arises." Id. at 142, 489 P.2d 381. In Oregon, we do not have a statute expressly authorizing such a motion. However, our case law has described situations in which an indictment is sufficient to withstand a demurrer but still may fail to give a defendant adequate notice of the precise charges against him. In those instances, Oregon common law has created the "motion for election" that gives a defendant more information as to the basis for the charges against him.
This type of motion for election was best described in State v. Hale , 335 Or. 612, 75 P.3d 448 (2003). There the Supreme Court addressed situations in which an indictment is sufficient to withstand a demurrer because it follows the statutory language but is insufficient for the purpose of notice for the defendant. The defendant was charged with 13 counts of aggravated murder and other noncapital crimes.
"Defendant *** demurred to the form of the indictment in this case on the ground that the six aggravated murder counts that alleged that he had committed murder to conceal the crime of third-degree sexual abuse and to conceal the identity of the perpetrator of the crime of third-degree sexual abuse *** were impermissibly vague."
Id. at 617-18, 75 P.3d 448 (footnote omitted).
Specifically, the defendant argued that he was
"entitled to notice of the particulars of the offenses he is alleged to have committed. The offenses of sexual abuse *418 in the third degree *** are not charged anywhere in the indictment.
"The indictment does not say who is or were the victims of the offense of sexual abuse in the third degree. That's not set forth anywhere in the indictment. There are three decedents who are all potential victims of that crime. There's also Jonathan Susbauer, who is claiming to be a victim of some sort."
Id. at 618, 75 P.3d 448 (ellipsis in original).
The trial court denied the demurrer. Id. at 619, 75 P.3d 448. The Supreme Court held that the issue of the sufficiency of the indictment was timely raised by the demurrer, but that the defendant was not entitled to require the state to make the indictment more definite and certain, and that the trial court's failure to grant the demurrer was not error. Id. at 620-21, 75 P.3d 448. The court reasoned that though they agreed with the defendant that "where the record would support more than one incident of third-degree sexual abuse, the defendant was entitled to know the state's precise theory of the case and which facts and circumstances the state was relying on to support the aggravated murder counts[,]" the Supreme Court did not agree that "requiring the trial court to sustain [the] demurrer was the proper (or only) vehicle for ensuring [the] defendant obtains the information that he seeks. [The] [d]efendant *520 had other avenues available to him for acquiring that information, such as later moving the court to require the state to elect a specific incident of third-degree sexual abuse, or requesting special jury instructions that clarify the matter." Id.
Then, in State v. Antoine , 269 Or. App. 66, 344 P.3d 69, rev. den. , 357 Or. 324, 354 P.3d 696 (2015), this court addressed the issue of notice when the indictment charged multiple counts of the same crime using the wording of the applicable statute, and each charge was worded identically. There, the defendant was indicted on four counts of first-degree sodomy, ORS 163.405 (1989), amended by Or. Laws 2017, ch. 318, § 5,[3] and four counts of first-degree sexual abuse, among other crimes. Id. at 68-69, 344 P.3d 69. The sodomy *419 charges were worded according to ORS 163.405 (1989)[4] and read as follows:
"That as a separate act and transaction from [each of the other counts]: The defendant, on or between September 1, 2006 and October 1, 2008, in Washington County, Oregon, did unlawfully and knowingly have deviate sexual intercourse with [the victim], a child under 12 years of age."
Id. at 69, 344 P.3d 69 (brackets in Antoine ).
The sexual abuse charges were worded according to ORS 163.427,[5] and read as follows:
"That as a separate act and transaction from [each of the other counts]: The defendant, on or between September 1, 2006 and October 1, 2008, in Washington County, Oregon, did unlawfully and knowingly subject [the victim], a child under 14 years of age, to sexual contact by touching [the victim]'s genitalia, a sexual and intimate part of the child."
Id. at 69-70, 344 P.3d 69 (brackets in Antoine ).
The state provided the defendant with a large amount of discovery, and the provided discovery "indicated that the victim had reported a greater number of criminal sexual acts than were alleged in the indictment." Id. at 70, 344 P.3d 69. The defendant demurred, arguing that "despite having received discovery from the state, the indictment was not sufficiently definite and certain as required by ORS 132.550(7) [ (2007), amended by Or. Laws 2017, ch. 650, § 7]." Id. at 70, 344 P.3d 69. The defendant's demurrer "asserted that the indictment provided insufficient notice of the charges, placed him at risk of double jeopardy, and failed to ensure that he was being *420 tried only for those criminal acts for which the grand jury had indicted him." Id. The defendant asked the trial court to dismiss the indictment and require the state to obtain a new indictment from the grand jury which was based on specific criminal acts. Id.
The state told the trial court that the issue the defendant raised could be solved by making an election of the specific criminal acts for which it would seek a conviction at the close of its case-in-chief. Id. at 71, 344 P.3d 69. The defendant did not object to the timing of the election. Id. The demurrer was overruled. The trial court concluded that the indictment was sufficient to withstand the demurrer but ordered the state to confer with the deputy district attorney who presented the case to the grand jury so that the state at trial only elected factual incidents that the grand jury relied upon in returning the indictment against the defendant. Id. After the trial court's ruling on the demurrer, the defendant moved for an order to require the state to disclose grand jury notes. Id. In support of that motion, the defendant argued that other, newly received discovery indicated that there were acts that the victim alleged that the defendant committed that did not correspond to the charges in the indictment.
*521 Id. at 72, 344 P.3d 69. The state "confirmed that the grand jury had selected a subset of the incidents of abuse for the indictment." Id. The state emphasized that the " 'grand jury did not consider specific facts related to specific charges.' Rather, it was 'presented with the information in the discovery and determined that each kind of touching happened at least X number of separate times.' " Id. at 73, 344 P.3d 69. Again, the state said an election would be made at the close of its case-in-chief, and the defendant did not object to the timing of the election. Id. at 73-74, 344 P.3d 69.
The defendant was found guilty on all counts and appealed. Id. at 75, 344 P.3d 69. Regarding the notice issue the defendant raised at trial and on appeal, we confirmed that though an indictment usually suffices if it alleges the charged crime in the words of the statute defining the offense, there are exceptions to that rule. Id. at 76, 344 P.3d 69. Such an exception occurs when "discovery would not aid the defendant because of the vast number of crimes from which the state could select in *421 charging the defendant." Id. We held that the defendant was correct that this case fell within the exception, and that the
"state's charging method effectively allowed the state to adduce evidence of multiple criminal acts in each count of the indictment, without defendant knowing which of the acts would be specified and argued to the jury for convictions. Such a charging process failed to provide defendant with proper notice of the charges before trial."
Id. at 77, 344 P.3d 69. However, we affirmed the trial court's overruling of the defendant's demurrer based on our understanding of Hale . Id. at 78-79, 344 P.3d 69. We reasoned that Hale placed "the burden on a defendant to attempt to procure adequate and timely notice of the charges against him, even when an indictment that is alleged in the words of the statute does not provide such notice." Id. at 78, 344 P.3d 69. Therefore, the
"defendant could have moved to discover the state's election of the specific criminal acts that the state would prosecute at trial, in time for defendant to tailor his defense to those specific incidents. Defendant did file a demurrer before trial but did not later move for the state's election of the specific criminal acts that it would prosecute at trial. That was so even though the state had put defendant on notice at the hearing on the demurrer that it would make its election after it presented its case-in-chief. Because defendant had another avenue to obtain adequate notice of the charges against him, we affirm the trial court's overruling of the demurrer insofar as it was based on lack of notice."
Id. at 79, 344 P.3d 69 (footnote omitted).
In contrast to the notice-based "motion to elect" discussed in Hale and Antoine , a motion for election made at the end of a trial, while termed the same, serves a fundamentally different purpose. The end-of-trial motion to elect is designed to ensure that the jury agrees as to every necessary element or concurs on the same occurrence in reaching a verdict on a single count of a charged crime. The right to jury concurrence arises from Article I, section 11, of the Oregon Constitution. State v. Ashkins , 357 Or. 642, 649, 357 P.3d 490 (2015) ; Pipkin , 354 Or. at 518 n. 6, 316 P.3d 255.
In Ashkins , the Supreme Court held that where an indictment charged a single occurrence of an offense, but *422 "the evidence permitted the jury to find any one or more among multiple, separate occurrences of that offense involving the same victim and the same perpetrator[,]" the state was "required to elect which occurrence it would prove, or alternatively, [the] defendant was entitled to a concurrence instruction." Ashkins , 357 Or. at 659, 357 P.3d 490. In other words, an election at the end of a trial is an alternative to a Boots instruction. See State v. Boots , 308 Or. 371, 377, 780 P.2d 725 (1989) ("In order to convict, the jury must unanimously agree on the facts required by either [charged] subsection [of ORS 163.095(2) ].").
In real-world practice, an Ashkins -type motion to elect is frequently resolved casually in trial court. It is common for the state to agree that an election is required, and voluntarily tailor its closing argument to make it clear to the jury the factual occurrence *522 upon which it is relying. That practice, despite being routine, is not actually how such an election should be handled. Because an Ashkins election exists to ensure jury concurrence, mere argument by the parties is insufficient to ensure that the jury only relied on certain evidence in reaching its verdict. To ensure the jury limits its consideration in the manner contemplated by the motion for election, the trial court needs to charge the jury in some manner. See, e.g. , State v. Coss , 53 Or. 462, 467, 101 P. 193 (1909) ("If [the prosecution] selects some particular act * * *, the jury ought not to be permitted to find the defendant guilty, because it may believe * * * that he did, in fact, commit some other criminal act of a similar nature to that charged."); State v. Pauley , 211 Or. App. 674, 679 n. 4, 156 P.3d 128 (2007) ("To be effective, an election must be confirmed to the jury by the court."). Thus, a meritorious motion for election under Ashkins and Pipkin triggers the need for a response from the trial court beyond simply relying upon the state to tailor its closing argument. Rather, the trial court must choose a means to ensure the jury limits its consideration to the elected factual occurrence.
In general, a trial court has three primary tools at its disposal to ensure a jury bases its verdict on a discrete factual situation: a jury instruction, a statement of issues, or a verdict form. The first option-the jury concurrence *423 instruction-is well understood, having been extensively discussed in previous decisions. The second option-the statement of issues-is an agreed neutral statement developed by the parties, approved by the court, and reduced to writing and submitted to the jury along with jury instructions, that summarizes the core of the dispute to be resolved by the jury. It is provided for in ORCP 59 C(2), a subsection applicable to criminal trials, which states that "[t]he court may, in its discretion, submit to the jury an impartial written statement summarizing the issues to be decided by the jury." The last option on that list-the verdict form-warrants a more detailed discussion.
At common law, there were three potential types of verdict forms, the general verdict, the special verdict, and the general verdict with interrogatories. Each of those three is codified in ORCP 61. ORCP 61 A defines a general verdict as "that by which the jury pronounces generally upon all or any of the issues either in favor of the plaintiff or defendant." It is the pronouncement on the ultimate issue of guilt or liability that is the historic hallmark of a general verdict. See, e.g. , Kennedy v. Wheeler , 356 Or. 518, 533, 341 P.3d 728 (2014) (explaining that "[t]he Council derived the text of ORCP 61 from several sources. In ORCP 61 A(1), defining the term 'general verdict,' the Council used wording identical to that used in former ORS 17.405 (1977), repealed by Or. Laws 1979, ch. 284, § 199, a statute that dated to the Deady Code."); Turner v. Cyrus , 91 Or. 462, 464, 179 P. 279 (1919) ("A general verdict is that by which the jury pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant."); Black's Law Dictionary 1791 (10th ed. (2014)) (defining the general verdict as "[a] verdict by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions"). However, the general verdict is an ineffective tool to ensure a jury bases its verdict on a discrete factual situation.
As the first alternative to a general verdict, ORCP 61 B defines the special verdict as follows:
"The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the *424 jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the *523 right to a trial by jury of the issue so omitted unless before the jury retires such party demands its submission to the jury. As to an issue omitted without such demand, the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."
The conceptualization of the special verdict set forth in ORCP 61 B is drawn from the Oregon Supreme Court's articulation of the difference between special and general verdicts in State v. Setsor :
"Our statute, making provisions for trials in criminal actions as to the verdict, is, in effect, as follows:
" 'The jury may either find a general verdict, or where they are in doubt as to the legal effect of the facts proven, they may find a special verdict.' Section 1546, L. O. L. 'A general verdict upon a plea of not guilty, is either "guilty" or "not guilty" which imports a conviction or acquittal of the crime charged in the indictment.' Section 1547, L. O. L. 'A special verdict is one by which the jury finds the facts only, leaving the judgment to the court. It must present the conclusions of fact, as established by the evidence.' Section 1548, L. O. L. 'The special verdict must be reduced to writing by the jury, or in their presence, under the direction of the court, and agreed to by them, before they are discharged. It need not be in any particular form, but is sufficient if it presents intelligibly the facts found by the jury.' Section 1549, L. O. L. 'In all cases, the defendant may be found guilty of any crime, the commission of which is necessarily included in that with which he is charged in the indictment, or of an attempt to commit such crime.' Section 1552, L. O. L. 'When there is a verdict found, in which it appears to the court that the jury have mistaken the law, the court *425 may explain the reason for that opinion, and direct the jury to reconsider their verdict; but if after such reconsideration they find the same verdict, it must be received.' Section 1554, L. O. L."
61 Or. 90, 92, 119 P. 346 (1911) (emphasis added). Setsor , in turn, reflects the historic common law understanding of a special verdict. See, e.g. , Black's at 1792 (defining special verdict as "[a] verdict in which the jury makes findings only on factual issues submitted to them by the judge, who then decides the legal effect of the verdict").
Thus, unlike a general verdict, where the jury considers the facts presented in evidence, applies the law, and renders a decision on the ultimate issue, i.e. , guilt or liability, with a special verdict the jury decides solely factual disputes, leaving it to the court to render the "verdict" on the ultimate question of guilt or liability that necessarily follows from those binding factual findings. As noted by Clementson on Special Verdicts :
"The special verdict is the sole basis of judgment. It finds the facts only, leaving it for the court to apply the law thereto, and is never properly rendered with a general verdict. It must be complete and consistent in and with itself, without aider by intendment or reference to the evidence. If it does not find all the facts essential to sustain (or defeat, as the case may be) the cause of action, it will not support a judgment."
George Burr Clementson, Special Verdicts and Special Findings by Juries 45 (1905). See also Floyd v. Laws , 929 F.2d 1390, 1395 (9th Cir. 1991) (noting that "[i]n theory, special verdicts compel the jury to focus exclusively on its fact-finding role. Special verdicts also empower the judge to play a more prominent role by applying the law to the jury's findings of facts").
The final type of verdict form provided by ORCP 61 C, is the general verdict with interrogatories-a hybrid between the general and special verdicts:
"The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation *426 or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers *524 are harmonious, the appropriate judgment upon the verdict and the answers shall be entered. When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial."
The general verdict with interrogatories, sometimes called the "special findings," is denoted by a jury finding upon the ultimate issue, in contrast to a special verdict, but includes factual findings relevant to some aspect of the judgment. As Clementson noted:
"On the other hand, the special findings embrace answers to one or more questions pertinent to but not necessarily covering any of the issues, though they may be controlling. They are never required except when a general verdict is returned, and are designed to explain and test the latter."
Clementson, Special Verdicts at 45; see also Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003) ("Although some general verdicts are more general than others, encompassing multiple claims, the key is not the number of questions on the verdict form, but whether the jury announces the ultimate legal result of each claim. If the jury announces only its ultimate conclusions, it returns an ordinary general verdict; if it makes factual findings in addition to the ultimate legal conclusions, it returns a general verdict with interrogatories. If it returns only factual findings, leaving the court to determine the ultimate legal result, it returns a special verdict.").
This distinction between general verdicts, special verdicts, and general verdicts with interrogatories is more *427 than mere semantics. The legislature has generally provided that special verdict forms are not permitted in criminal cases in ORS 136.455, which provides that "[a] general verdict upon a plea of not guilty is either 'guilty,' of an offense charged in the accusatory instrument, or 'not guilty' " and ORS 136.485, which states that:
"If the jury finds a verdict which is not a general verdict, the court may, with proper instructions as to the law, direct the jury to reconsider it; and the verdict cannot be received until it is given in some form from which it can be clearly understood that the intent of the jury is to render a general verdict."
In criminal cases, the special verdict is statutorily prohibited. However, as discussed previously, the distinction between "special" and "general" verdicts is the jury's pronouncement on the ultimate issue of guilt or liability. The general verdict with interrogatories contains such a pronouncement by the jury, and as such is not prohibited by ORS 136.485. In fact, ORS 136.770 expressly provides that the jury may render a decision on guilt, as well as answer sentence enhancement factor questions-a classic example of a general verdict with interrogatories. Thus, the general verdict with interrogatories exists as the third option for ensuring a jury limits its decision-making to a particular factual occurrence.
In sum then, in terms of clarity of language, and for the sake of a trial court accurately understanding the issue and argument presented, a motion for election based on the reasons set forth in Hale or Antoine would more accurately be termed a "Motion for State's Election for Notice" or, alternatively, a "Motion for State's Election to Make More Definite and Certain." In contrast, a motion based on the reasons set forth in Ashkins or Pipkin would more accurately be termed a "Motion for State's Election for Concurrence" or, alternatively, a "Motion for Concurrence Election and Jury Instruction." That later, Ashkins -based motion is a request to charge the jury. In response, the court can (1) give a jury concurrence instruction, or (2) direct the parties to develop and submit an approved neutral statement of issues that limits the jury to the agreed upon factual allegation for the *428 charged crime, or *525 (3) create a general verdict form with interrogatories. Those options are neither singular nor exclusive, and the cautious court might wisely utilize a combination of methods. In any case, some form of communication from the court, to the jury, is required. As such, it is incumbent upon a party seeking to preserve the issue for appellate review not merely to move for an election, but to request the court to charge the jury in one of those manners.
Having attempted to offer some clarity in this area, we now turn to defendant's arguments in this case. At the outset, although defendant made a motion for election, defendant did not request a concurrence instruction, propose a statement of issues, or submit a proposed general verdict with interrogatories. Neither did defendant object to the court's failure to charge the jury using any of those options. While the state does not dispute preservation on the election assignment of error, we have an independent obligation to ensure preservation. See, e.g. , State v. Wyatt , 331 Or. 335, 346, 15 P.3d 22 (2000) (holding that court has independent obligation to ensure preservation despite parties' concessions). In this case, defendant's trial argument was framed as asking the court to force the state to make a specific argument in closing, as opposed to asking the court to charge the jury in a particular manner. Nevertheless, a review of the record does show that the parties cited to relevant case law, and the trial court described reviewing caselaw before denying the motion to elect. In that light, despite defendant's failure to request that the trial court charge the jury in some manner, we believe the purposes of preservation were served. However, as we discuss below, defendant's claim fails on the merits.
In State v. White , 115 Or. App. 104, 838 P.2d 605 (1992), we interpreted the menacing statute, ORS 163.190, in the context of jury concurrence as to which occurrence constituted a menacing charge. The defendant in that case had brandished a flashlight at his neighbor during an argument, then went inside his house and returned with a gun. Id. at 106, 838 P.2d 605. The defendant was charged with menacing, ORS 163.190, and pointing a firearm at another, ORS 166.190. Id. Following an acquittal on the firearm charge, the defendant *429 argued "that the court should have given a jury instruction that specified the act that the state relied on to support the menacing charge" because "the jury could have found him guilty of menacing, even though only some jurors might have concluded that he had pointed a gun at another, while others might have concluded he had brandished a flashlight." Id. at 106-07, 838 P.2d 605. This court held that "no one act must be proven to support a conviction for menacing[.]" Id. at 107, 838 P.2d 605. "[The] defendant could have done several different acts and, if he intended thereby to attempt to place [the victim] in fear, would have committed menacing. The jury did not have to agree unanimously that he did any specific act that would cause fear in order to find him guilty of menacing." Id. at 107-08, 838 P.2d 605.
Defendant does not invite us to reexamine the holding in White or argue that the Supreme Court's holding in Ashkins may be in conflict with the reasoning in White . Ashkins , 357 Or. at 659, 357 P.3d 490 (holding that where an indictment charged a single occurrence of an offense, but "the evidence permitted the jury to find any one or more among multiple, separate occurrences of that offense involving the same victim and the same perpetrator[,]" the state was "required to elect which occurrence it would prove, or alternatively, [the] defendant was entitled to a concurrence instruction." (emphasis added)). Because White controls in this case, we cannot conclude that the trial court erred in denying the motion to elect, or plainly erred in failing to deliver a concurrence instruction.
Affirmed.

Defendant was also charged with fourth-degree assault, ORS 163.160 (Count 1); reckless driving, ORS 811.140 (Count 3); and two counts of recklessly endangering another person, ORS 163.195 (Counts 4-5).

ORCP 21 D provides:
"Upon motion made by a party before responding to a pleading, or if no responsive pleading is [permitted] by these rules upon motion by a party within 10 days after service of the pleading, or upon the court's own initiative at any time, the court may require the pleading to be made definite and certain by amendment when the allegations of a pleading are so indefinite or uncertain that the precise nature of the charge, defense, or reply is not apparent. If the motion is granted and the order of the court is not obeyed within 10 days after service of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just."

The amended language in the statute does not affect our analysis.

ORS 163.405 (1989) provided, in relevant part:
"(1) A person who engages in deviate sexual intercourse with another person or causes another to engage in deviate sexual intercourse commits the crime of sodomy in the first degree if:
"* * * * *
"(b) The victim is under 12 years of age[.]"

ORS 163.427 provides, in relevant part:
"(1) A person commits the crime of sexual abuse in the first degree when that person:
"(a) Subjects another person to sexual contact and:
"(A) The victim is less than 14 years of age[.]"