No. 1035     December 3, 2025     321

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

LOUISE MAY RICHARDS,
*Petitioner-Appellant,*

*v.*

Nichole BROWN,
Superintendent,
Coffee Creek Correctional Facility,
*Defendant-Respondent.*

Washington County Circuit Court
22CV12804; A180691

Patricia A. Sullivan, Senior Judge.

Argued and submitted September 24, 2024.

Andy Simrin argued the cause for appellant. Also on the brief was Andy Simrin PC.

Rebecca M. Auten, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

Petitioner appeals a judgment denying her petition for post-conviction relief from a jury conviction for second-degree murder, ORS 163.115(1)(a). Petitioner contends that the post-conviction court erred by denying her inadequate-assistance-of-counsel claim, in which she argued that counsel was inadequate for failing (1) to ask the court to instruct the jury that at least 10 of the 12 jurors had to concur before the jury could reject petitioner's affirmative defense of extreme emotional disturbance (EED); (2) to object when instead the court instructed the jury that any vote of less than 10-2 in favor of the EED defense constituted a rejection of that defense; and (3) to object to the trial court receiving a 9-3 rejection of the EED defense as part of the verdict. *See* ORS 163.115 (1)(a) (setting forth EED as an affirmative defense to murder in the second degree); ORS 163.118(1)(b) (intentional criminal homicide constitutes first-degree manslaughter when committed under EED); ORS 163.135(1) (describing the affirmative defense of EED). The post-conviction court rejected those three arguments, in large part, because it concluded that that there was no minimum concurrence requirement for *rejecting* an EED defense, but also because it concluded that petitioner failed to show that the failure to take those actions resulted in constitutionally deficient representation. We conclude that the post-conviction court's understanding of the law with regard to jury concurrence was erroneous; however, we conclude that it did not err in denying petitioners claims because petitioner failed to establish that trial counsel was constitutionally deficient. We affirm.

## BACKGROUND

Petitioner shot and killed her husband in 2017. She was initially charged with murder and later, after a change in the law, with second-degree murder, ORS 163.115(1)(a). Petitioner never disputed that she killed her husband, but she contended that she did so while under the influence of an EED. *See* ORS 163.135(1) (providing that EED is an affirmative defense to second-degree murder). If she were to prevail on that defense, the intentional killing of her husband would amount to first-degree manslaughter rather than second-degree murder. ORS 163.118(1)(b).

During petitioner's criminal trial, the trial court instructed the jury that, to find petitioner guilty of murder, "each and every juror must agree on the verdict of guilty. *** So if [it] find defendant guilty of murder, all 12 [had] to agree on that." Next, the trial court instructed the jury that, if the jury unanimously found petitioner guilty of murder, it would need to answer whether petitioner acted under the influence of an EED. The trial court explained that, for petitioner's affirmative defense to succeed, "at least 10 [jurors had to] agree that [petitioner proved] by a preponderance of the evidence that she [acted] under the influence of [an EED] at the time of the murder." The court did not instruct the jury as to any concurrence requirement for rejecting the affirmative defense. Trial counsel did not object to the court's instructions and did not request any alternative instructions regarding jury concurrence for the EED affirmative defense.

Ultimately, the jury unanimously found petitioner guilty of second-degree murder and voted 9-3 against the affirmative defense of EED. That is, only three jurors found that petitioner had proved her EED defense. Trial counsel did not object to the validity of the jury's verdict nor to the court's acceptance of it. The trial court entered a conviction for second-degree murder.[1]

In her petition for post-conviction relief, petitioner alleged that counsel was constitutionally ineffective, under both the state and federal constitutions, for failing to request a special EED concurrence instruction, to object to the jury instructions given, and to object to the validity of the verdict. The legal premise underlying those allegations is that ORS 136.450 (2019), *amended by* Or Laws 2021, ch 478, § 11, required at least 10 jurors to concur on the rejection of the EED defense because it provides, "The verdict of a trial jury in a criminal action shall be by concurrence of at least 10 of 12 jurors."[2]

---

[1] On direct appeal, in an unpreserved claim of error, petitioner argued that the trial court plainly erred by instructing the jury as it did with regard to jury concurrence and the EED defense. We affirmed without an opinion in Case No. A173238 on June 16, 2021, and entered judgment on August 4, 2021.

[2] Below and on appeal, petitioner relied on the 1997 version of ORS 136.450 because that was the version in effect when she committed her crime. But the 2019 amendments to that statute applied to crimes sentenced after November 2019. Or Laws 2019, ch 635, § 30. We rely on the 2019 statute because petitioner

The post-conviction court denied relief, concluding that petitioner's legal premise was wrong and that she had failed to demonstrate deficient performance:

> "[PCR] COURT:   Petitioner's position is not legally correct, and the instruction and process used by the Trial Court was legally sound. Any objection would have been denied by the Trial Court. Plaintiff has not shown that all other attorneys would have objected on that basis, particularly as this presents as novel argument, and the procedure used [by] the Trial Court is generally used throughout the state."

On appeal, petitioner renews her state and federal ineffective-assistance-of-counsel arguments. In response, the superintendent argues that the trial court correctly denied relief on petitioner's claim because, although a concurrence of 10 jurors is necessary to accept an EED claim, it is not needed to reject it. Alternatively, she argues that, regardless of whether 10 jurors needed to concur in rejecting the EED defense, the post-conviction court properly concluded that petitioner failed to establish that trial counsel rendered deficient performance in failing to make that argument.

## STANDARD OF REVIEW

We review a judgment denying post-conviction relief for legal error and are bound by the post-conviction court's factual findings to the extent that they are supported by the evidentiary record. *Evans v. Nooth*, 368 Or 159, 165, 487 P3d 42 (2021) (citing *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015)).

## ANALYSIS

To prevail on a claim of ineffective assistance of counsel under Article I, section 11, of the Oregon Constitution,[3] a petitioner must: (1) show that counsel failed to exercise "reasonable professional skill and judgment" and (2) demonstrate that the petitioner was prejudiced as a result. *Montez v. Czerniak*, 355 Or 1, 7-8, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598 (2014). The test for a

---

was sentenced in December 2019. Regardless, our decision would be the same under either version of the statute.

[3] Article I, section 11, provides in relevant part, "In all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel[.]"

federal ineffective-assistance-of-counsel claim raised under the Sixth Amendment to the United States Constitution[4] is functionally identical. *Id.*

    To determine whether trial counsel exercised "reasonable professional skill and judgment" in his handling of the jury concurrence needed for the EED defense, we must first decide whether a jury can validly reject an EED defense with less than 10 jurors concurring. Only if petitioner is correct and 10 jurors must concur in rejecting that defense do we need to address whether trial counsel exercised reasonable professional skill and judgment by failing to take one of the three actions identified in the petition for post-conviction relief.

A.  *The jury concurrence requirement for rejecting the EED defense*

    At the time of petitioner's trial, ORS 136.450 (2019) provided that "[t]he *verdict* of a trial jury in a criminal action shall be by concurrence of at least 10 of 12 jurors." (Emphasis added.) Relying on that statute, petitioner contends that 10 jurors needed to concur in rejecting her EED defense because that decision constitutes a "verdict." The superintendent argues that the jury's rejection of the EED defense was not a "verdict" and, thus, did not need to meet the concurrence requirement of ORS 136.450 (2019). Because the parties' dispute centers on the meaning of "verdict," we apply our standard methodology for statutory construction, evaluating the statute's text, context, and legislative history to determine the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

    We begin with the text. Where the legislature does not define a statutory term, we presume that the legislature intended it to carry its common and ordinary meaning. *Id.* at 175. Where the legislature employs a legal term of art in a statute, we look to its "established legal meaning" in legal dictionaries. *State v. Amoroso*, 336 Or App 732, 737, 562 P3d 641 (2024) (citing *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014)). As relevant here, the plain and

---

[4] The Sixth Amendment, made applicable to the states by the Fourteenth Amendment, provides, in relevant part, "In all criminal prosecutions, the accused shall enjoy the right *** to have the Assistance of Counsel for his defen[s]e."

ordinary meaning of the term "verdict" is simply a jury's factual finding or decision on a question submitted to them:

> "**1:** the answer of a jury given to a court concerning a matter of fact in a civil or criminal cause committed to their examination and determination **:** the finding or decision of a jury on the matter legally submitted to them in the course of the trial of a cause that ordinarily in civil actions is for the plaintiff or for the defendant and in criminal actions guilty or not guilty \*\*\*."

*Webster's Third New Int'l Dictionary* 2543 (unabridged ed 2002). Similarly, *Black's Law Dictionary* defines it as "[a] jury's finding or decision on the factual issues of a case." *Black's Law Dictionary* 15c (12th ed 2024). Whether using its ordinary or legal meaning, the definition of the term "verdict" is certainly broad enough to encompass a jury's decision on the question of the EED defense.

The context of ORS 136.450 (2019) provides much greater assistance in identifying the legislature's intent. The context establishes that the legislature understood the jury's decision on an affirmative defense to be but one component of its overall general verdict of guilty or not guilty on the offense itself. In other words, just as a certain number of jurors must concur on each element of a crime in order to reach a general verdict of guilty or not guilty, *see, e.g.*, *State v. Phillips*, 354 Or 598, 606, 317 P3d 236 (2013) ("[J]ury concurrence is required for each legislatively defined element necessary to impose criminal liability."), so must they concur on the acceptance or rejection of an affirmative defense in order to reach a general verdict of guilty or not guilty. For it is only by concurring on each element of the crime, on each defense, and on each affirmative defense that a jury can return a valid general verdict at all.

We start with ORS 136.455, which provides, "A general verdict upon a plea of not guilty is either 'guilty,' of an offense charged in the accusatory instrument, or 'not guilty.'" Next, ORS 136.485 provides,

> "If the jury finds a verdict which is not a general verdict, the court may, with proper instructions as to the law, direct the jury to reconsider it; and the verdict cannot be received until it is given in some form from which it can be clearly

understood that the intent of the jury is to render a general verdict."

Relying on those two statutes, we have previously explained that, although "there [a]re three potential types of verdict forms, the general verdict, the special verdict, and the general verdict with interrogatories," in Oregon criminal cases, "the special verdict is statutorily prohibited." *State v. Payne*, 298 Or App 411, 423, 427, 447 P3d 515 (2019).

A general verdict is one in which the jury simply renders its decision on the "ultimate issue of guilt[]." *Id.* at 423 (quoting ORCP 61 A). By contrast, in a special verdict, the jury does not return a verdict of "guilty" or "not guilty." Instead, the jury resolves the factual disputes at issue in the case, and the judge applies the law to those findings. *Id.* at 425. Again, special verdicts are generally prohibited in criminal cases,[5] and typically, the only lawful verdict on a criminal charge is "guilty" or "not guilty."[6] ORS 136.455. The upshot is this: If the only option in a criminal case is a general verdict of guilty or not guilty on the offense itself, then the jury's decision on an affirmative defense must function merely as a component of that general verdict. If, instead, a jury's factual findings on an affirmative defense were a separate question that the jury needed to answer separately in *addition* to its general verdict on the offense, then the trial court would be in a position of applying the law to that finding and either overriding a general verdict of guilty (because the affirmative defense applied) or receiving the guilty verdict (because it did not). In that scenario, the jury's finding on the affirmative defense would constitute a

---

[5] To the extent that the parties or the court wants jurors to explicitly state their factual findings on a verdict form to ensure that their general verdict is lawful, there is the option of a general verdict with interrogatories. When using interrogatories, the jury still renders an ultimate verdict of either "guilty" or "not guilty," but it also answers questions that explain that verdict. *Payne*, 298 Or App at 426. The court can then check the verdict against the interrogatories to ensure that the verdict follows correctly from the factual findings made in the interrogatories. *Id.*

[6] There are some explicit exceptions to the general prohibition on special verdicts in criminal cases. *See* ORS 136.785(1) ("When an enhancement fact is tried to a jury, any question relating to the enhancement fact shall be submitted to the jury."); ORS 132.557(2) ("The state must prove each subcategory fact beyond a reasonable doubt and the jury shall return a special verdict of 'yes' or 'no' on each subcategory fact submitted."). No such exception exists for affirmative defenses.

prohibited special verdict. No such problem exists if a jury's finding on an affirmative defense is simply a component of or prerequisite to its general verdict on the offense itself, such that finding that an affirmative defense applies simply results in a not guilty verdict and vice versa. In that way, it operates identically to the way general defenses are treated on a routine basis. For example, where self-defense is raised, a trial court cannot accept a guilty verdict if six jurors find that the state failed to disprove that defense and six jurors find that it did—the general guilty verdict would be valid only if the requisite number of jurors concur that the state disproved that defense.

It bears emphasis that, even though EED is only a partial defense, it is still an affirmative defense. Proving it renders a defendant not guilty of second-degree murder and guilty, instead, of first-degree manslaughter. An EED finding quite literally precludes a guilty verdict on second-degree murder. Therefore, under ORS 136.450 (2019), just as ten jurors had to concur on the elements in order to render a guilty verdict for second-degree murder, ten jurors had to concur that petitioner had not proven her affirmative defense.

Another useful clue from statutory context is that there is no statute that expressly addresses jury concurrence with regard to affirmative defenses in criminal cases. That is, there is no statute, other than ORS 136.450 (2019), specifying how many jurors must concur to *accept* an affirmative defense or to *reject* it. On the one hand, if the EED defense is part of the "verdict," as contemplated by ORS 136.450 (2019), then the legislature provided how many votes were necessary to accept or reject the defense. However, if, as the superintendent argues, a jury's decision on an affirmative defense is not a "verdict" or a component of a "verdict" within the meaning of ORS 136.450 (2019), then *no* statute governs the jury's vote on an affirmative defense. That absence would seem to be an unlikely legislative choice because, if the legislature has not specified the required number of votes, then what is to say that an affirmative defense is not proven by the vote of three jurors? From the legislature's omission of another statute on the issue of jury concurrence for affirmative defenses, we can infer that the

legislature understood a jury's decision on an affirmative defense to be a component of the general verdict.

Finally, we have been presented with no legislative history relevant to the issue before us, nor are we aware of any.

To summarize, the greater context of ORS 136.450 (2019) shows that the legislature understood a jury's finding on an affirmative defense to be a component of the "verdict" referred to in that statute, requiring at least a 10-jury concurrence. As illustrated more concretely in this case, the jury could not have arrived at a general verdict of guilty for second-degree murder without first deciding whether petitioner had proven her EED defense, because if she had proven the defense the jury would have been precluded from returning a guilty verdict for that crime. Thus, it would have needed to return a not guilty verdict for second-degree murder and a guilty verdict for first-degree manslaughter.[7] That conclusion appears to be in tension with some of the discussion in our recent decision in *State v. Wayman*, 339 Or App 9, 20, 568 P3d 232, *rev allowed*, 374 Or 372 (2025). Yet, in that case, we were not presented with the argument that we face here and, further, we do not understand our holding here to disturb our holding in *Wayman*.

In *Wayman*, the defendant assigned error to the rejection of a special jury instruction about EED and a proposed special verdict form, each of which informed the jury that it could reject his EED defense only if all jurors concurred. 339 Or App at 11. The jury unanimously found the defendant guilty of second-degree murder, and then, by a 10-2 concurrence, it rejected the EED defense. *Id*. As a

---

[7] That is not to suggest that, in this context, first-degree manslaughter is a lesser included offense of second-degree murder—it is not, given that first-degree manslaughter contains an element that second-degree murder does not (*i.e.*, the existence of an EED). *See State v. Hernandez*, 340 Or App 704, 705-06, 572 P3d 1057 (2025) (citing *State v. Chapman*, 209 Or App 771, 777, 149 P3d 284 (2006), *rev den*, 342 Or 473 (2007) ("A lesser-included offense is one that meets either of two tests: (1) that one offense is necessarily included in the other, by virtue of the elements of the former being subsumed in the latter; or (2) that the facts alleged in the indictment expressly include conduct that describes the elements of the lesser included offense." (Internal quotation marks omitted.)). It simply recognizes the logical reality that an acquittal for second-degree murder based solely on the existence of an EED necessarily satisfies that additional element in first-degree manslaughter.

result, the trial court entered a judgment of conviction for second-degree murder. *Id.*

On appeal, the defendant argued that the second-degree murder statute and the federal constitution required juror unanimity to reject the EED defense. *Id.* at 14. We disagreed. In reaching our decision, we engaged in a statutory construction of the second-degree murder statute (ORS 163.115(1)) to determine whether *that statute* established the legislature's intent with regard to the jury concurrence on the rejection of the EED defense. *Id.* at 15-16. We concluded that the statutory text of the second-degree murder statute did not answer the question expressly, *id.* at 17, and that the legislative history revealed the legislature's desire to shift the burden to prove EED to the defendant, *id.* at 18. We concluded that requiring all jurors to concur in rejecting the EED defense ran counter that that legislative intent to shift the burden of proving EED to the defendant. *Id.* We also rejected the defendant's constitutional argument that the federal constitution required unanimity to reject the EED defense. *Id.* at 19. Based on our rejection of the defendant's arguments about the second-degree murder statute and the federal constitution, we concluded that juror unanimity was not required to reject the EED defense. *Id.* at 20.

However, in *Wayman*, we were not presented with any argument about ORS 136.450, and, consequently, we did not address its potential effect on the number of votes necessary for the jury to reject an affirmative defense. The only reference to that statute appears in a parallel citation, and the citation includes a footnote specifying that "[the] defendant does not separately challenge the trial court's instruction and the verdict form's statement that ten of twelve jurors must agree that defendant had established EED." In other words, the defendant in *Wayman* was not pointing at ORS 136.450 and arguing that it supplied the answer for how many jurors had to concur on the rejection of the EED defense. Of course, that is precisely the argument we are faced with here. We thus understand *Wayman* to answer the question of whether the criminal-homicide statutes, the EED statute, or the federal constitution require jurors to

unanimously reject the EED defense. There, we answered no. We do not disturb that conclusion here. Here, we reach our decision solely under ORS 136.450 (2019).[8]

Returning to the case before us, we summarize our holding. At the time of petitioner's trial, ORS 136.450 (2019) required at least 10 jurors to concur on a criminal verdict. That means that 10 jurors had to concur as to each factual prerequisite to guilt for the offense of second-degree murder, including that defendant had not proven her defense of EED. Therefore, the post-conviction court was incorrect in concluding that there was no jury concurrence requirement for rejecting the EED defense.

B. *Did counsel exercise reasonable professional skill and judgment?*

Having decided that petitioner is correct that ORS 136.450 (2019) required 10 jurors to concur in rejecting her EED defense, we must now address whether trial counsel rendered constitutionally deficient performance in not making that argument at trial. To show that counsel performed deficiently, "it is not enough to show 'that another lawyer would have tried the case differently' or 'that a reviewing court would disagree with that counsel's decision.'" *Antoine v. Taylor*, 368 Or 760, 768, 499 P3d 48 (2021) (quoting *Krummacher v. Gierloff*, 290 Or 867, 881, 627 P2d 458 (1981)). Instead, a petitioner must show that "counsel's actions or inaction reflected an absence of 'professional skill and judgment.'" *Antoine*, 368 Or at 768 (quoting *Krummacher*, 290 Or at 875-76). When a petitioner argues that an attorney was constitutionally deficient by not raising "an unsettled legal issue," the petitioner can prevail only if correct resolution of that legal issue was clear enough that "any lawyer exercising reasonable professional skill and judgment necessarily would have seen it.'" *Curry v. Highberger*, 326 Or App 259, 264, 531 P3d 702, *rev den*, 371 Or 511 (2023) (quoting *Jackson v. Franke*, 369 Or 422, 434, 507 P3d 222 (2022)).

---

[8] We recognize that, under the current version of ORS 136.450, it may be that a jury must unanimously reject the EED defense to arrive at a general guilty verdict in a second-degree murder case. ORS 136.450(1) ("(1) A jury in a criminal action may render a verdict of guilty only by unanimous agreement."). However, that issue is not before us, nor was that argument presented in *Wayman*.

The post-conviction court concluded that petitioner had "not shown that all other attorneys would have objected" on the grounds she asserts, "particularly as this presents a novel argument, and the procedure used [by] the Trial Court [was] generally used throughout the state." Again, we review for legal error, accepting the post-conviction court's factual findings if they are supported by the record. *Walraven v. Premo*, 277 Or App 264, 279, 372 P3d 1 (2016).

Petitioner argues that statutory law at the time of petitioner's trial was sufficiently clear that any reasonable defense attorney should have known that ORS 136.450 (2019) required 10 jurors to concur on the rejection of an affirmative defense. First, she argues that our holding in *State v. Reese*, 156 Or App 406, 410, 967 P2d 514 (1998), was sufficient to notify reasonable counsel of the concurrence requirement. There, we held that an earlier version of ORS 136.450 required a jury to be unanimous in finding a defendant guilty except for insanity. Second, she argues that "[t]here is nothing in the text of ORS 136.450 that suggests that a verdict rejecting an affirmative defense has a different concurrence requirement than a verdict finding in favor of the affirmative defense." But, importantly, she points to no evidence in the record to suggest that, at the time of trial, criminal defense attorneys were making the concurrence argument that she advances here.

Meanwhile, the superintendent argues that the state of the law was not sufficiently clear at the time of trial that any lawyer exercising reasonable professional skill and judgment necessarily would have seen the problem with the court's instructions or the jury's verdict. She argues that the record supports the post-conviction court's factual finding that petitioner's argument is a "novel argument" that ran contrary to the "procedure *** generally used throughout the state." That evidentiary support was supplied by trial counsel's assertion that he had made himself aware of the state of the law at the time of trial and believed that there was no minimum concurrence required to reject the EED defense. He further stated that he had never heard of any other defense attorneys arguing about jury concurrence to reject the EED defense. The superintendent also offered

evidence from other contemporary trials involving the EED defense, which demonstrated that trial courts were routinely providing materially identical jury instructions regarding EED as were given in petitioner's case.

We find the superintendent's argument more persuasive. First, we disagree with petitioner that our holding in *Reese* was sufficient to alert a reasonable defense attorney about the concurrence requirement for rejecting an affirmative defense. That is because *Reese* made clear that it viewed a guilty-except-for-insanity (GEI) defense as resulting in a guilty verdict. 156 Or App at 410. We explained, "The only difference between a 'guilty' verdict and a 'guilty except for insanity' verdict is the dispositional alternatives, including possible confinement and supervision by the Psychiatric Security Review Board." *Id*. So, although *Reese* is in line with our view of how ORS 136.450 operates, because our focus and reasoning in *Reese* turned so heavily on the fact that the GEI defense results only in a different type of guilty verdict for the same offense, we are not convinced that it made the state of the law with regard to jury concurrence in rejecting an affirmative defense sufficiently clear to say that trial counsel was constitutionally inadequate for failing to make the argument petitioner relies on here.

Petitioner's best argument is the fact that there is no other statute that addresses jury concurrence with regards to affirmative defenses and that ORS 136.450 (2019) makes no differentiation between a jury accepting or rejecting an affirmative defense. Indeed, as is evident from our discussion above, we find that argument compelling and persuasive. But we ultimately weigh it against the post-conviction court's factual findings, which are supported by evidence in the record. As the post-conviction court found, trial courts at the time of petitioner's trial were routinely instructing juries that they needed only to concur in accepting an affirmative defense, and criminal defense attorneys were not arguing otherwise. Indeed, even as recently as *Wayman*, criminal defendants were not relying on ORS 136.450 to make the argument petitioner asserts here. And, until now, we have never squarely decided the issue.

That is to say that, having now been presented with petitioner's argument, we are persuaded that she is correct on the law, and, in hindsight, it seems that her argument was clearly established by statute—ORS 136.450 (2019) required at least 10 jurors to concur that defendant had not proven her EED defense. But the question is not whether, in hindsight, petitioner's argument would have been legally correct if it had been made. The question is whether the state of the law was so clear at the time of trial that failure to make the argument reflected an absence of professional skill and judgment. Given the post-conviction court's factual findings and the lack of clarity in the state of the law before this decision, we cannot say that it was. For that reason, we conclude that the post-conviction court did not err in denying petitioner's claims.

Affirmed.