Submitted September 24, 2020, affirmed January 21, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRIAN DALE MOSLEY,
*Defendant-Appellant.*

Tillamook County Circuit Court
18CR32534; A170593

480 P3d 1023

Defendant appeals from a judgment convicting him of violating a stalking protective order (SPO), ORS 163.750. He assigns error to the trial court's exclusion of evidence regarding the dismissal of a different SPO that a witness had pursued against defendant. The state argues that the Court of Appeals cannot reach the assignment of error because defendant failed to preserve his argument or make an offer of proof as to the excluded evidence. *Held*: Defendant did not make a record sufficient to permit review of his challenge to the trial court's order.

Affirmed.

Jonathan R. Hill, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kyle Krohn, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Colm Moore, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

Affirmed.

## ORTEGA, P. J.

Defendant appeals from a judgment convicting him of violating a stalking protective order (SPO), ORS 163.750. On appeal, defendant assigns error to the trial court's exclusion of evidence regarding the dismissal of a different SPO that a witness had pursued against defendant. The state argues that we cannot reach the assignment of error because defendant failed to preserve his argument or make an offer of proof as to the excluded evidence. We agree that defendant did not make a record sufficient to permit review of his challenge to the trial court's order. Accordingly, we affirm.

We recount only those facts necessary to frame the trial court's ruling. D and defendant had been neighbors for around 20 years. Their properties shared an easement over the driveway of another neighbor, B. A few years ago, D obtained an SPO against defendant because of defendant's "past threatening behavior." D had also filed a civil suit against defendant, in which B was also involved.

At defendant's trial, the state sought to prove that he violated the SPO by recklessly coming into D's physical presence while on B's property. Before trial, the court resolved various evidentiary issues in chambers, which the court addressed on the record as follows:

> "So the first issue is the issue of bias, and the parties are wanting to explore, I guess, the relationship or the basis of the bias between the parties. And I believe in chambers, the parties were agreeable to—that there is an ongoing civil suit between [defendant] and both [D] and [B].
>
> "That [D] and [B] *** don't like [defendant]. And they have a—I can't remember if you said tense or emotional relationship. Something like that. ***
>
> "*****
>
> "Okay. And then, so those I think were the issues that the parties had at least agreed upon.
>
> "The details of the civil suit, the bridge dispute, and I guess the well dispute, aren't really relevant as far as they aren't really probative towards bias after you get past— that there is this thing that's ongoing. And I think as far

as the prejudicial, it could, you know, mislead or misdirect the jury into other issues."

At trial, D testified that he was talking with B on B's property when defendant drove his car back down B's long driveway, "slowed way down to almost a crawl," and gave D and B a "nasty look." Defendant contested that account.

B also testified about the incident, consistently with D's testimony. After that testimony, the prosecutor had the following exchange with B:

"Q.   And just briefly, at some point after this, you ended up getting a stalking order against [defendant] also; right?

"A.   Yes, sir. I did.

"Q.   And you are currently involved in a—in a civil suit that's against [defendant]; right?

"A.   Yes, sir, I am."

Defendant did not object during that testimony regarding the stalking order that B had obtained.

After the prosecutor completed direct examination of B, and before beginning cross-examination, defense counsel asked to approach the bench and the trial court convened a discussion in chambers. Upon returning, the court simply stated that "[t]he objection is overruled," and when defense counsel stated that no objection was made, the court stated, "Well, you had started to make an objection, and then we talked about it." The state rested its case and defendant moved for a judgment of acquittal, which the court denied.

After denying that motion, the court made the following statement:

"We do need to put one thing on the record. In chambers, [defendant] raised—or had an objection for clarification of the [c]ourt's ruling regarding whether or not the State had opened the door by examining [B] regarding bias regarding that he had had a stalking order. And [defendant] wanted to inquire regarding the fact that that stalking order was dismissed.

"The court did not allow that. The ruling that we had done pretrial was based on prejudice [and] probative

balance. And the State had offered what the [c]ourt had said * * * would be admissible, as we talked in chambers.

"Going into the facts of the underlying * * * stalking order that [B] had against [defendant] * * * I think isn't particularly probative and it could be misleading. And it isn't very probative. So[,] we didn't allow that in."

The court then asked defendant if he had anything "to add to the objection" and defendant answered, "[n]o, I think that covered it, Your Honor." Defendant made no offer of proof, then or later, as to what B's testimony would have been in response to an inquiry "regarding the fact that [B's] stalking order was dismissed." A jury found defendant guilty of violating the SPO as to D.

On appeal, defendant asserts that the trial court erred when it excluded evidence that B's SPO against defendant had been dismissed. Defendant argues that the dismissal of that SPO was relevant for impeachment purposes, because it permitted inferences about B's bias or interest. *See State v. Hubbard*, 297 Or 789, 796, 688 P2d 1311 (1984) ("To be relevant, evidence introduced to impeach a witness for bias or interest need only have a mere tendency to show the bias or interest of the witness."); OEC 401 (defining "relevant evidence"). Specifically, defendant argues that the dismissal of B's SPO supports three inferences: (1) defendant's prosecution gave B an opportunity to hold defendant accountable because defendant had escaped the consequences of his actions through the dismissal of the SPO; (2) the fact that the SPO had been dismissed put B in a position where he stood to gain from the prosecution if defendant were convicted and placed on probation or in jail; and (3) if the jury knew that B's allegations underlying the SPO were disproved or disbelieved by a judge, a jury could reasonably infer D's bias to lie about defendant. Further, defendant contends that the error warrants reversal because the evidence would have undermined B's credibility, which was important to the verdict.

The state contends that defendant failed to preserve his assignment of error, because the record does not reflect whether he made the same arguments in the trial court that he now makes on appeal with regard to impeachment and

bias evidence. Furthermore, the state contends that defendant's failure to make an offer of proof is fatal to his assignment of error because the trial court did not have an opportunity to consider its ruling in light of the evidence being offered, which in turn prevents us from evaluating whether the trial court erred and whether any error was prejudicial. We agree with the state.

In general, a claim of error that has not been raised in the trial court will not be considered on appeal. *State v. Parkins*, 346 Or 333, 338, 211 P3d 262 (2009); *see also* OEC 103(1)(b) (a party can assign error to a trial court's exclusion of evidence "if the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked"). Requiring a party to preserve an issue in the trial court serves several purposes. It permits a trial court to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made. *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008). Also, it "fosters full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it." *Id*. at 219-20. In addition, in determining whether an evidentiary error is prejudicial, we must determine whether there was more than a little likelihood that the error affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). That assessment requires that we consider the nature of the proffered evidence in the context of the trial as a whole. *Id*.

Because of those requirements for appellate review, development of the record sufficient to permit review includes ensuring that off-the-record discussions are adequately reflected on the record so that we can determine if an error has been preserved. *See, e.g.*, *State v. Y. B.*, 296 Or App 781, 785, 439 P3d 1036 (2019) (explaining the obligation a party opposing a ruling has to "put on the record any account of any critical proceedings occurring off of the record").

Here, defendant failed to preserve his assignment of error. The jury heard evidence of B's bias against defendant when it heard about the existence of the civil suit involving B and B's SPO against defendant. Thus, defendant's

argument essentially reduces to a contention that there are additional inferences about B's bias toward defendant that can be drawn from the dismissal of the SPO that it could not infer from the existence of the SPO and civil suit. However, the record does not reflect that defendant raised below the ways in which the dismissal would be relevant to support the additional inferences about B's bias or interest that defendant now raises on appeal. Further, the trial court's ruling appeared to focus on OEC 403. Despite being afforded the opportunity to "add to the objection" on the record, defendant did not do so, nor did he provide an offer of proof as to what B's testimony would be or ask questions that would have aided the trial court to evaluate any potential error in excluding the evidence. That is also important because defendant's specific theories of relevance and the reasonable inference he sought to draw from the evidence depended on the circumstances underlying the SPO's dismissal, such as whether B voluntarily withdrew the SPO petition or whether a judge disbelieved B's allegation. Without an adequate record, we are unable to assess whether an error occurred or was likely to be prejudicial.

Affirmed.