732 December 11, 2024 No. 891

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RAPHAEL ENRICO GIOVANNI AMOROSO,
*Defendant-Appellant.*

Josephine County Circuit Court
21CR40205; A181123

Matthew G. Galli, Judge.

Submitted April 22, 2024.

Tracey RH Naumes and Peter J. Carini filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Philip Thoennes, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Pagán, Judge, and Mooney, Senior Judge.

PAGÁN, J.

Affirmed.

## PAGÁN, J.

In this criminal appeal from a judgment of conviction for felony driving under the influence of intoxicants (DUII), ORS 813.011, and driving while suspended or revoked, ORS 811.182, we address whether a municipal court stamp qualifies as a "seal" for the purposes of the self-authenticating documents rule under OEC 902 and whether ORS 1.030—outlining which courts may have seals in the state of Oregon—affects that determination. Defendant assigns two errors: first, that the trial court erred by admitting into evidence a judgment with a municipal court stamp as self-authenticating; and second, the court erred by denying his motion for a judgment of acquittal (MJOA), which defendant asserts should have been granted if the municipal court judgment had not been admitted. We conclude that the trial court did not err in concluding that the stamp in question was sufficient to count as a seal under OEC 902 and that ORS 1.030 does not dictate a different outcome. Therefore, the municipal court judgment was properly admitted as evidence. In turn, we conclude that the trial court did not err in denying the MJOA, and we thus affirm.

Defendant was convicted of DUII, which was elevated to a felony because he had been convicted of three prior DUIIs in the last decade. One of those prior DUIIs came from the Cottage Grove Municipal Court. The state offered proof of that conviction in the form of a document entitled "JUDGMENT and SENTENCE." On each page, stamped in red, was the phrase "CERTIFIED TRUE COPY" above the words "COTTAGE GROVE MUNICIPAL COURT," with a line for a signature, which had been signed by the same individual on each page.

Defendant objected to the judgment's admission, citing OEC 902, arguing that the stamp did not count as a seal. The court overruled the objection and admitted the judgment. Later in the proceedings, defendant moved for a judgment of acquittal on Count 1 and raised the issue again, but this time brought ORS 1.030 to the court's attention and argued that it prevents municipal courts from having a seal in the first place. Defendant reasoned that if municipal courts cannot have seals, it would be impossible for the

judgment to bear a seal for OEC 902 purposes. After vigor-
ous argument and discussion about both OEC 902 and ORS
1.030, the trial court adhered to its prior ruling, kept the
judgment in evidence, and denied the MJOA. The jury found
defendant guilty on all counts, and the trial court entered a
judgment of conviction for one count of DUII and one count
of driving while suspended or revoked.[1] Defendant timely
appealed.

We review OEC 902 determinations for legal error.
*See State v. Cunningham*, 337 Or 528, 536, 99 P3d 271
(2004), *cert den*, 544 US 931 (2005); *see State v. Mueller*, 96
Or App 185, 772 P2d 433 (1989).

The core issue is whether the municipal court stamp
qualifies as a seal under OEC 902, which allows certain
kinds of documents to be self-authenticating if they meet
particular requirements:

"(1)   Extrinsic evidence of authenticity as a condition
precedent to admissibility is not required with respect to
the following:

"(a)   A document bearing a seal purporting to be that
of the United States, or of any state *** or of a political
subdivision, department, officer, or agency thereof, and a
signature purporting to be an attestation or execution.

"* * * * *

"(d)   A copy of an official record or report or entry
therein, *** certified as correct by the custodian or other
person authorized to make the certification, by certificate
complying with subsection (1)(a), (b) or (c) of this section or
otherwise complying with any law or rule prescribed by the
Supreme Court."

In this instance, because the judgment was a *copy* of
the original, it would be admissible only under OEC 902(1)(d),
which requires certification. In turn, the document must
meet the requirements of OEC 902(1)(a), meaning that
it must bear a seal. Here, although the signature in con-
text with the "certified true copy" wording of the stamp is

---

[1] The jury found defendant guilty of two counts of DUII, which were merged
into one count in the judgment.

sufficient for certification,[2] a mere signature is not sufficient to act as a seal. *See* Laird C. Kirkpatrick, *Oregon Evidence* § 902.07 (7th ed 2020) (discussing how signatures were historically acceptable but were excluded with the adoption of the modern OEC 902). Thus, we must interpret what the word "seal" means in OEC 902 and determine whether the proposed judgment's stamp qualifies as such.

"In the construction of a statute, a court shall pursue the intention of the legislature if possible." ORS 174.020. When interpreting the meaning of a statute, text and context are the first layer of analysis. *State v. Gaines*, 346 Or 160, 164, 206 P3d 1042 (2009). We begin with OEC 902's text. The text of OEC 902 does not define seal. Defendant does not identify a definition of seal, whilst the state points us towards dictionary definitions. However, we note that ORS 42.110 is a contextual definition statute. Under ORS 42.110, "[a] seal is a particular sign made to attest in the most formal manner the execution of an instrument." Nothing in the text of OEC 902 explicitly points to ORS 42.110, nor vice versa. And while neither party raised ORS 42.110, either at trial or on appeal, "we have an independent duty to correctly interpret a statute," even if the parties have not presented the issue in such a manner. *Taylor v. SAIF*, 329 Or App 135, 138, 539 P3d 326 (2023). However, ORS 42.110 does not cite OEC 902, and only one statute, ORS 42.125, specifically cites ORS 42.110's definition of seal. But it does not control our determination, because ORS 42.125 only applies to state officers and agencies, not state subdivisions like Cottage Grove. There is thus no direct textual relationship between OEC 902 and ORS 42.110, and we may only use it in our contextual analysis, which we do below.

"We ordinarily presume that the legislature intended words enacted as part of the same statute to have

---

[2] Defendant takes issue with the signature being that of an "unknown individual in an unknown capacity." Indeed, Professor Kirkpatrick notes that "[t]he certificate *should* indicate the official position of its maker, that the maker has compared the copy with the original document on file in the public office and that the copy is true and correct." Laird C. Kirkpatrick, *Oregon Evidence* § 902.07 (7th ed 2020) (emphasis added). Although we agree that such practice would be the gold standard, and failure to adhere to such practice can be considered by a court, it is not strictly required. At any rate, Professor Kirkpatrick acknowledges that "[p]resumably only authorized persons will have access to an official seal." *Id.* at § 902.04. Because we ultimately conclude that the stamp was a seal, the trial court could find that the use of the stamp implied the official position of the signatory.

the same meaning throughout that statute." *Comcast Corp. v. Dept. of Rev.*, 363 Or 537, 546, 423 P3d 706 (2018) (concluding that the phrase "transactions and activities in the regular course of its trade or business" had same meaning in two different statutes despite applying to different calculations); *see, e.g., State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (a statute's context includes "related statutes"). Although ORS 42.125 does not directly control, the invocation of ORS 42.110 in ORS 42.125,[3] which refers to OEC 902(a) and (d), suggests that ORS 42.110's definition of seal should apply throughout OEC 902. ORS 42.125 provides, in relevant part, that:

> "(1)   For the purposes of [OEC 902] (1)(a) and (d), each state officer and state agency may have a seal which, unless specifically provided otherwise by law, shall consist of an impression, imprint or likeness of the state seal accompanied by the name of the state officer or state agency.
>
> "(2)   As used in this section:
>
> "(a)   Seal' has the meaning given that term in ORS 42.110."

Combined with the presumption that a word has the same meaning throughout a statute, the context of ORS 42.110 further suggests it should apply generally to OEC 902.

        With that context in mind, ORS 42.110 supports our conclusion that a stamp, such as the one used in this case, can be a seal. ORS 42.110 does not require that a seal take a distinct form, such as an embossment or wax; rather, it must just be a "particular sign." As for the requirement that a seal attest in the most formal manner, without other limiting language, we see no reason that a stamp, with only words, cannot attest to something in the most formal manner. There is no requirement for a particular design, particular wording, or the inclusion of a graphic. ORS 42.110 supports our ultimate determination that a stamp can be a seal.

---

[3] We do however note the difference between "seal" and "state seal" in ORS 42.125, which should not be conflated. *See also Black's Law Dictionary* 1550 (10th ed 2014) (defining seal and state seal separately). While the state seal is used in many agency seals, and indeed the seal of this court, we conclude that the presence of the state seal is not dispositive in determining whether a document is sufficient for OEC 902 purposes.

Looking back at OEC 902, the state argues, without relying on ORS 42.110, that dictionary definitions of the word "seal" indicate that a stamp may be a seal. When undefined in a statute, we assume, at least initially, that the legislature intended the "plain, natural, and ordinary" meaning of a word. *DCBS v. Muliro*, 359 Or 736, 746, 380 P3d 270 (2016) (exploring a dictionary definition as part of the text and context analysis). When the legislature uses legal terminology, we look to its "established legal meaning" in legal dictionaries. *Id.* (citing *Comcast Corp.*, 356 Or at 296). "We do not, however, interpret statutes solely on the basis of dictionary definitions"—we examine the use of the word in context. *Muliro*, 359 Or at 746. We conclude that under OEC 902, "seal" is used in the sense of "a design embossed or stamped on paper to authenticate, confirm, or attest; an impression or sign that has legal consequence when applied to an instrument." In modern practice, a seal does not require wax or impression, indicating that a stamp is sufficient. *Black's Law Dictionary* 1550 (10th ed 2014) (citing *Restatement (Second) of Contracts* § 69 comment a (1979)). Thus, nothing in a dictionary definition of the word "seal" precludes the stamp on the document from being a seal.

Defendant argues that *Mueller*, 96 Or App at 185, demands strict compliance with the seal requirements.[4] *Mueller* involved alcohol breath test results, which we concluded were not sealed for OEC 902 purposes despite bearing the signed certification of an Oregon State Police custodian. *Id.* at 188. However, the issue in *Mueller* was not that the purported seal was itself incorrect, but that it had not been pressed fully enough, so that only part of the seal could be read. *Id.* Indeed, if *Mueller* stands for any relevant principal, it is that a court retains the discretion to not admit a document as self-authenticating if there is sufficient infirmity in the seal. *Id.* at 188 ("It follows that the impression, imprint or likeness must be sufficiently discernible that the factfinder can say that it purports to be a seal.").

Insofar as defendant points to *State v. Pingelton*, 31 Or App 241, 248, 570 P2d 666 (1977) (Thornton, J.,

---

[4] Although neither party raises this argument, *Mueller* deals with ORS 42.125, which specifically states that it is defining "seal" for the purposes of state agencies under OEC 902, not state subdivisions.

dissenting), to argue that there is a difference between true copies and certified copies, he relies on a 50-year-old dissent, and subsequent case law has not borne out the distinction. At any rate, here, the stamp itself states that it is both certified *and* true, which obscures any meaningful difference. Neither *Mueller* nor *Pingelton* affect whether a stamp can be a seal, or whether this stamp was a seal.

Having established that a stamp can be a seal under OEC 902, we now turn to ORS 1.030. The state alleges that "[d]efendant never alerted the trial court to ORS 1.030," thus rendering the issue unpreserved. But ORS 1.030 was the subject of a nearly hour-long discussion during the MJOA argument, which included a clear statement by the court that the parties had made a record on ORS 1.030. The issue was properly preserved.

On the merits, defendant argues that, under ORS 1.030, the Cottage Grove Municipal Court is forbidden from having a seal.[5] ORS 1.030 states, in part:

"(1)   Each of the following courts, and no other, has a seal:

"(a)   The Supreme Court and the Court of Appeals.

"(b)   Each circuit court and the Oregon Tax Court.

"(c)   Each county court."

The remainder of the statute dictates the appearance of each seal and that it is to be kept and used by the clerk of the court. ORS 1.030(2) - (3).

The trial court's response to defendant's argument puts it best: "And so what if they have a seal and so maybe the Municipal Court's in violation of 1.030. Does that necessarily make [the judgment] not authentic because * * * [the Municipal Court] shouldn't have a seal but it does?"

A bird's eye view of the Oregon Evidence Code reinforces the trial court's framing of the issue. The purpose of

---

[5] To the extent that defendant is arguing that municipal courts cannot be recognized as having self-authenticating judgments because they are not "courts of record," that argument is unpreserved because the relevant argument apparently occurred in a ten-minute off-the-record conversation during the MJOA colloquy. *See State v. Mosley*, 308 Or App 564, 568, 480 P3d 1023 (2021) (off-the-record conversations must be adequately preserved in the record to be reviewable).

OEC 902 is to ensure that documents are what they purport to be and to stymie forgery and fraud. Legislative Commentary to OEC 902, *reprinted in* Kirkpatrick, *Oregon Evidence* § 902.02. The point of OEC 902 is that sealed government documents are self-authenticating "because practical considerations reduce the possibility of fraud and error to a very small dimension." *Id*. Replicating or misusing a municipal court stamp would be no small feat, would constitute a serious crime, and would be easily detectable. *See* Kirkpatrick, *Oregon Evidence* § 902.04 ("[M]isuse of a governmental seal is subject to criminal penalties in most jurisdictions."). We struggle to imagine that the legislature intended ORS 1.030, which is clearly aimed at homogenizing the seals of the courts throughout the state, to override the judicial efficiency aims of OEC 902.

Turning back to OEC 902, we conclude that a non-embossed court stamp, bearing the name of the court, a statement of what the stamp purports to do (in this case that it is a certified true copy), and a signature as certification, can be sufficient to meet the requirements of OEC 902(1)(a) and (d). Thus, we conclude that the trial court did not err by admitting the municipal court judgment as evidence.[6]

Having determined that the judgment was properly admitted, we now turn to defendant's second assignment of error: the denial of the MJOA. A judgment of acquittal is appropriate if the evidence is insufficient to support a verdict. *State v. Cunningham*, 320 Or 47, 61-62, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). We review questions of the sufficiency of the evidence in a criminal case following a conviction by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 63. Our review is not for whether we believe that defendant is guilty beyond a reasonable doubt but whether the evidence is sufficient for the factfinder to so find. *Id*.

---

[6] As always, the bar to admission of a piece of evidence is lower than the bar to conviction. The ultimate factual determination on authenticity rests with the trier of fact. Kirkpatrick, *Oregon Evidence* § 902.03.

Our scope of review is limited to defendant's narrow argument. Defendant does not challenge the underlying evidence of intoxication but, rather, the evidence of the three prior convictions, which elevated his DUII to a felony.[7] Having concluded that the judgment from the municipal court was admissible, our analysis is straightforward. The state alleged that defendant committed DUII and had three prior DUII convictions in the last ten years. The court admitted three prior DUII judgments, which purported to be against defendant. A reasonable juror could have found defendant guilty of DUII with three prior convictions. Thus, because we conclude that the trial court did not err by admitting the municipal court judgment, it did not err in subsequently denying defendant's MJOA.

Affirmed.

---

[7] Defendant challenged the admission of only the Cottage Grove judgment. He raised no objection to the admissibility of the other two judgments.